ARTIE W. GOLDMAN v. PARKLAND OF DALLAS, INC.

No. 3

(Filed 14 October 1970)

1. Process § 14— service on nonresident defendant — jurisdiction of state court — contract made in this state

In an action by a North Carolina resident against a nonresident manufacturer of dresses for breach of a contract whereby the resident undertook to act as the manufacturer's representative in this and other states, the trial court properly found that the contract was made in this State, thereby subjecting the manufacturer to the *in personam* jurisdiction of the courts of this state, where there was evidence that (1) the parties entered into general discussions in another state concerning a possible contract; (2) the salesman later received a letter from the manufacturer detailing the terms of a proposed contract; (3) the letter provided that "if the above is agreeable, please sign and return the original copy of the letter"; and (4) the resident signed the letter in this state and mailed it back to the manufacturer. G.S. 55-145(a)(1).

2. Appeal and Error § 57— findings of fact — review on appeal

3. Contracts § 2— offer and acceptance — letter of proposed contract

A letter from a dress manufacturer to a North Carolina resident which set forth the terms of a proposed contract whereby the resident would represent the manufacturer in the sale of dresses and which provided that "if the above is agreeable, please sign and return the original copy of the letter," *is held* to constitute an offer; the final act necessary to make the letter a binding contract was the resident's acceptance in signing the letter and depositing it, properly addressed to the manufacturer, in the U. S. mail.

Goldman v. Parkland

4. **Process § 14; Constitutional Law § 24— service on nonresident defendant — contract made in this state — due process**

A contract between a North Carolina resident and a nonresident manufacturer of dresses met the due process requirement of "substantial connection" with this state so as to subject the manufacturer to the *in personam* jurisdiction of the courts of this state, where (1) the contract was made in this state; (2) the resident, under the terms of the contract, solicited business for the manufacturer in thirty or more North Carolina cities and towns; and (3) the resident devoted a larger part of his time to promoting the manufacteurer's business in this state than in any other state.

APPEAL by defendant under G.S. 7A-30(1) from the Court of Appeals.

Plaintiff, a resident of North Carolina, instituted this action for breach of contract against defendant, a Texas corporation not licensed to do business in North Carolina. Pursuant to the provisions of G.S. 55-145(a)(1) and G.S. 55-146, the complaint and summons were served on the Secretary of State on 11 March 1969 and were duly forwarded by letter to the defendant at its principal office in Dallas, Texas, by registered mail, return receipt requested.

At the September 8, 1969 Civil Session of Superior Court of Guilford County, Greensboro Division, defendant made a special appearance before the Honorable Robert A. Collier, Jr., Judge Presiding, and moved to dismiss the action for lack of jurisdiction; to quash the summons and to set aside the attempted service of summons on the ground that the court had not acquired jurisdiction over the defendant since defendant was a foreign corporation not doing business in North Carolina, and for the reason the contract out of which the plaintiff's cause of action arises was not made in North Carolina and there was no substantial performance under the contract in North Carolina. The court considered the verified complaint, the affidavits or Ira Orenstein, vice president of defendant corporation; Artie W. Goldman, the plaintiff; and Leonard Smoler, and found that the contract involved in the action was made in North Carolina, and denied defendant's motion to dismiss. Defendant appealed, and the Court of Appeals affirmed. 7 N.C. App. 400, 173 S.E. 2d 15.

*Smith, Moore, Smith, Schell & Hunter by Harold N. Bynum for defendant appellant.*

*Harry Rockwell and John R. Hughes for plaintiff appellee.*

MOORE, Justice.

Appellant questions the validity of service of summons on defendant, a foreign corporation, by service on the Secretary of State in accordance with the provisions of G.S. 55-146(a)(b) and challenges the constitutionality of G.S. 55-145(a)(1) as applied in this case.

The verified complaint alleges in substance these facts: Plaintiff is a resident of Guilford County, North Carolina, and defendant is a Texas corporation with its principal office in the city of Dallas therein and is engaged in the business of manufacturing and selling dresses. Shortly before 4 January 1968, plaintiff and defendant entered into a written contract under which the plaintiff undertook to act as a manufacturer's representative for the defendant in the sale of its "Petites Unlimited" line of dresses in specified states in the southeastern region of the United States, including North Carolina. The contract was to remain in full force and effect for one year, commencing 4 January 1968 and ending 3 January 1969, and the plaintiff was to receive a commission on sales of defendant's merchandise with a minimum "draw" of $250 per week. Plaintiff entered into the performance of the contract in accordance with its terms and continued to perform the same until 20 June 1968, at which time the plaintiff alleges the defendant breached said contract and by reason of this breach defendant is indebted to the plaintiff in the sum of $7,000. The plaintiff further alleges the contract, a copy of which was attached to the complaint, was made in North Carolina and was to be performed in North Carolina.

[1] This appeal poses two questions: (1) Did the court err in finding as a fact that the contract was made in North Carolina? (2) Upon the facts and circumstances disclosed by the record, does the assumption of *in personam* jurisdiction of corporate defendant by the North Carolina court, pursuant to G.S. 55-145(a)(1), offend the due process clause of the Constitution of the United States? We hold both questions should be answered, no.

The record discloses that plaintiff and Ira Orenstein, vice president of defendant corporation, discussed a possible contract between plaintiff and defendant corporation in Atlanta, Georgia, in late October or early November, 1967. Defendant contends, and offers an affidavit of Ira Orenstein tending to show, that a verbal agreement was entered into at that time in Atlanta and that the letter, which plaintiff contends is the contract and

which was attached to the plaintiff's complaint as Exhibit "A," simply confirmed the prior verbal agreement. Plaintiff contends, and offers his affidavit and that of Leonard Smoler which tend to show, that no agreement was reached in Atlanta, but to the contrary there was only a general discussion concerning a possible contract and that the subsequent letter setting out in detail the terms of a proposed contract constituted an offer which was to be accepted or rejected by plaintiff; that the letter itself said: "If the above is agreeable, please sign and return the original copy of this letter"; that plaintiff accepted this offer in Greensboro, North Carolina, by signing the letter and depositing it in the United States mail in Greensboro, North Carolina, addressed to Parkland of Dallas, Inc., Dallas, Texas.

Based on the complaint and affidavits, the trial court found:

"1. That the conversations between the plaintiff and the defendant's agent at the Atlanta Merchandise Mart the latter part of October, 1967, were preliminary negotiations looking toward the entry into a future contract; that the conversations constituted neither an offer nor an acceptance of the terms of the contract attached to the complaint as Exhibit "A."

"2. That the contract, Exhibit "A," when forwarded by the defendant to the plaintiff in Greensboro for execution, constituted an offer to the plaintiff to enter into a contract upon the terms therein set forth; and that the said offer was accepted by the plaintiff in Greensboro, North Carolina, by his signature thereto, and the same became a binding contract between the parties at the time the accepted offer was placed in the United States mails in Greensboro, North Carolina."

Upon the foregoing findings of fact, the court concluded that the contract, the alleged breach of which is the subject of this action, was made in North Carolina.

[2] It is established law that the findings of fact by the trial judge are conclusive if supported by competent evidence even though there is evidence *contra. Zopfi v. City of Wilmington,* 273 N.C. 430, 438, 160 S.E. 2d 325, 333; *Burgess v. Gibbs,* 262 N.C. 462, 466, 137 S.E. 2d 806, 809; *Farmer v. Ferris,* 260 N.C. 619, 133 S.E. 2d 492; 1 Strong's N. C. Index 2d, Appeal and Error § 57, p. 223.

[3] The letter in this case by its terms constituted an offer.

The final act necessary to make it a binding agreement was its acceptance, which was done by the plaintiff by signing it in Greensboro, North Carolina, and there depositing it in the United States mail properly addressed to defendant. The trial judge's findings were based upon ample competent evidence, and the conclusion that the contract was made in North Carolina was correct. *Board of Education v. Board of Education,* 217 N.C. 90, 6 S.E. 2d 833; *Bundy v. Commercial Credit Co.,* 200 N.C. 511, 157 S.E. 860; *Rucker v. Sanders,* 182 N.C. 607, 109 S.E. 857; 2 Strong's N. C. Index 2d, Contracts § 2, p. 294.

[4]  Defendant further contends, conceding the contract was made in North Carolina, the assumption of *in personam* jurisdiction by the North Carolina court, pursuant to G.S. 55-145(a)(1), offends the due process clause of the Constitution of the United States since the defendant did not have sufficient "minimum contacts" with the State as required by the decisions of the United States Supreme Court.

G.S. 55-145(a)(1) provides in pertinent part:

"Every foreign corporation shall be subject to suit in this State, by a resident of this State. . . , whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(1)   Out of any contract made in this State or to be performed in this State. . . ."

This Court in construing G.S. 55-145(a)(1) in *Byham v. House Corp.,* 265 N.C. 50, 143 S.E. 2d 225, a case involving a contract made in Tennessee but performed in North Carolina, held that the service of process upon the foreign corporation was proper under the terms of the statute since the contract was to be performed in this State. On the due process question, the Court stated:

". . . The controlling authority in this field is found in the decisions of the Supreme Court of the United States. The correct criteria are set out in the landmark case, *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) [66 S. Ct. 154, 90 L. ed 95]. As stated in *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957) [78 S. Ct. 199, 2 L. ed. 2d 223]:

"'Since *Pennoyer v. Neff,* 95 U.S. 714 [24 L. ed. 565 (1878)], this Court has held that the Due Process Clause

of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned "consent," "doing business," and "presence" as the standard for measuring the extent of state judicial power over such corporations. See Henderson, the Position of Foreign Corporations in American Constitutional Law, c. V. More recently in *International Shoe Co. v. Washington,* 326 U.S. 310 [66 S. Ct. 154, 90 L. ed. 95 (1945)], the Court decided that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'the traditional notions of fair play and substantial justice.' " *Id.,* at 316.'

" 'In *McGee* the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between states, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714 [24 L. ed. 565 (1878)], to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310 [66 S. Ct. 154, 90 L. ed. 95 (1945)]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.' *Hanson v. Denckla,* 357 U.S. 235, 250 [78 S. Ct. 1228, 2 L. ed. 2d 1283 (1958)]."

*Hanson v. Denckla,* 357 U.S. 235, 2 L. ed. 2d 1283, 78 S.Ct. 1228, continued: "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that state that are prerequisite to its exercise of power over him."

For a full discussion of these and other cases, see Annot., 20 A.L.R. 3d 1205 (1968); 44 N. C. L. Rev. 449; 2 Wake Forest Intra. L. Rev. 1.

This Court in *Byham v. House Corp., supra,* listed a number of factors, some essential and others only having weight, to be considered in determining whether the test of "minimum contacts" and "fair play" have been met. The essential requirements are: (1) The form of substituted service adopted by the forum state must give reasonable assurance that notice to defendant will be actual; (2) there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, invoking the benefits and protection of its law; and (3) the Legislature of the forum state must have given authority to its courts to entertain litigation against a foreign corporation to the extent permitted by the due process requirement. The Court then states: "It is sufficient for the purpose of due process if the suit is based on a contract which has substantial connection with the forum state," citing *McGee v. International Life Ins. Co., supra.*

In *McGee* the United States Supreme Court held it was "fair" to subject a foreign corporation to jurisdiction when the only contact with the state of the forum (California) was a single life insurance policy mailed to the forum state and on which premiums had been mailed from the forum state to the foreign corporation in Texas, holding that such insurance contract had a "substantial connection" with the forum state.

In the instant case the contract in question clearly met the requirement of "substantial connection" with North Carolina. It was made in this State. Plaintiff, under the terms of the contract, solicited business in thirty or more North Carolina cities and towns for the purpose of creating and expanding a market for appellant's dresses in North Carolina. He devoted a larger part of his time to promoting defendant's business in North Carolina than in any other state and did in fact sell a quantity of dresses manufactured by the defendant to customers within this State. The other essential requirements set out in *Byham v. House Corp., supra,* are also met; that is, the form of substituted service adopted by North Carolina gives reasonable assurance that the defendant would be given actual notice—in fact, there is no contention on the part of the defendant that it did not receive actual notice; by entering into a contract made in North Carolina and to be performed in part in North Carolina, the defendant availed itself of the privilege of conducting its business in this State thus invoking the benefits and protection of its laws, and clearly the North Carolina Legislature, by the express

words of the statute authorizing such service on a foreign corporation when the contract was made in North Carolina, sought to give to its courts the power to assert jurisdiction over nonresident defendants to the full extent permitted by the due process requirement.

The court's assumption of *in personam* jurisdiction over defendant in this action fully meets the requirements of due process under the decisions of the United States Supreme Court and the decisions of this Court. The judgment below is

Affirmed.