TOM TOGS, INC. v. BEN ELIAS INDUSTRIES CORP.

No. 649PA85

(Filed 7 October 1986)

1. **Process § 14.4— foreign corporation—contract made in and to be performed in North Carolina—subject to jurisdiction**

   A contract was made in North Carolina and was to be performed in North Carolina, so that defendant was subject to jurisdiction in North Carolina under N.C.G.S. § 55-145(a)(1), where one of defendant's buyers visited the New York showroom of an independent manufacturer's representative and placed an order for plaintiff's clothes; a purchase order was forwarded to plaintiff in North Carolina for acceptance or rejection; plaintiff's name and address were on the order; the independent agent had no authority to accept any offer made to plaintiff; and plaintiff accepted the order by sending the shirts to defendant within the specified time, as was customary in the industry.

2. **Process § 14.3— contract made within North Carolina—jurisdiction not automatic—due process inquiry required**

   Jurisdiction over a foreign corporation does not automatically follow from a determination that a transaction falls within the language of N.C.G.S. § 55-145; the requirements of due process are the ultimate test of jurisdiction over a nonresident defendant. N.C.G.S. § 1-75.4.

3. **Process § 14.3; Constitutional Law § 24.7— foreign corporation—minimum contacts—evidence sufficient**

   There were sufficient minimum contacts to justify the exercise of personal jurisdiction over the defendant without violating due process where defendant made an offer to plaintiff, whom defendant knew to be located in North Carolina; plaintiff accepted the offer in North Carolina; the contract was for special-

ly manufactured shirts and defendant was told that the shirts would be cut in North Carolina; defendant agreed to send its personal labels to plaintiff in North Carolina for plaintiff to attach to the shirts; the shirts were manufactured and shipped from North Carolina; and defendant returned them to North Carolina. N.C.G.S. § 25-1-105 (1965).

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.

ON appeal by plaintiff pursuant to N.C.G.S. § 7A-30(1) and, as an alternative basis, grant of discretionary review to plaintiff pursuant to N.C.G.S. § 7A-31 of a decision of the North Carolina Court of Appeals, 76 N.C. App. 663, 334 S.E. 2d 105 (1985), reversing an order entered at the 19 October 1984 Session of Superior Court, WAKE County, by *Lee, J.*, denying defendant's motion to dismiss plaintiff's breach of contract action. Heard in the Supreme Court 14 April 1986.

*Johnson, Gamble, Hearn & Vinegar, by Samuel H. Johnson and Richard J. Vinegar, for plaintiff-appellant.*

*Smith, Debnam, Hibbert & Pahl, by Bettie K. Sousa, for defendant-appellee.*

FRYE, Justice.

The sole issue in this case is whether the Court of Appeals erred in holding that the trial court lacked personal jurisdiction over defendant for lack of sufficient minimum contacts between defendant and this State. We conclude that such contacts do exist and accordingly reverse the decision of the Court of Appeals.

The record in this case discloses the following information.

Plaintiff is a North Carolina clothing manufacturer. Defendant is a clothing distributor who buys from manufacturers and resells to retail stores. Defendant is incorporated in the State of New Jersey but has its principal place of business in New York City.

In November of 1983, one of defendant's buyers visited the New York City showroom of one Neal Schulman. According to Schulman's own affidavit, he was at that time an independent clothing manufacturer's sales representative for a number of manufacturers, including plaintiff. Defendant's buyer examined

samples of clothing manufactured by plaintiff Tom Togs and discussed ordering similar merchandise from plaintiff with Schulman. Schulman informed the buyer that the clothes would have to be specially cut and shipped from the Tom Togs factory in North Carolina.

The following day, defendant gave Schulman a purchase order to forward to plaintiff in North Carolina for over $44,000 worth of shirts. Plaintiff's name and address, showing it to be located in North Carolina, appear on the purchase order in the space labelled "Vendor." Defendant also both wrote on the purchase order and told Schulman that it would send plaintiff its own labels to be sewn into the shirts. Schulman accordingly forwarded the purchase order to plaintiff in North Carolina to accept or reject it. Schulman said in his affidavit, and plaintiff confirmed, that he had no authority to accept any offer made to plaintiff. He specifically denied accepting this offer.

Upon receipt of the purchase order, plaintiff accepted by sending the shirts to defendant within the time specified. This method of acceptance was a customary method in the industry at that time.[1]

Plaintiff shipped the shirts to defendant in early January 1984. About two weeks after receipt, defendant complained to the plaintiff that the shirts did not conform to the samples. Plaintiff agreed that defendant could return the shirts on the express condition that the entire order was returned in its original condition. However, when the shirts arrived back in North Carolina, a substantial number were missing, and the rest had been damaged. Plaintiff notified defendant that it was rejecting the returned shirts, and intended to resell them pursuant to N.C.G.S. § 25-2-706(3), which it proceeded to do.

Plaintiff then sued defendant for damages in Superior Court, Wake County. Defendant moved for dismissal for lack of both subject matter and personal jurisdiction and for failure to state a claim upon which relief could be granted. The trial judge denied

---

1. We note that this method is also acceptable under the Uniform Commercial Code. *See* N.C.G.S. § 25-2-206 (1965).

the motion,[2] and defendant appealed to the Court of Appeals solely on the issue of jurisdiction. The Court of Appeals reversed. Plaintiff appealed to this Court on the grounds that a substantial constitutional question was involved, *see* N.C.G.S. § 7A-30(1), and alternatively petitioned for discretionary review on the basis that the case involved extraordinary issues of public interest and jurisprudential significance, *see* N.C.G.S. § 7A-31. This Court denied defendant's motion to dismiss the appeal and granted plaintiff's motion for discretionary review on 7 January 1986.

This Court has previously held that a two-step analysis must be employed to determine whether a non-resident defendant is subject to the *in personam* jurisdiction of our courts. *Miller v. Kite,* 313 N.C. 474, 329 S.E. 2d 663 (1985). First, the transaction must fall within the language of the State's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution. *Id.*

[1]  Our long-arm statute, N.C.G.S. § 1-75.4 (1983), allows the courts of this State to exercise *in personam* jurisdiction over a properly notified defendant[3] when, *inter alia,* a special jurisdiction statute applies. Plaintiff contends that such a statute, N.C.G.S. § 55-145(a)(1), does apply in this case. N.C.G.S. § 55-145(a)(1) (1982) provides:

> (a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
>
> (1) Out of any contract made in this State or to be performed in this State . . . .

2. In his order, the trial judge also resolved in plaintiff's favor a conflict in the evidence over the place where defendant's offer was accepted. Plaintiff has averred that it accepted the offer in North Carolina as described herein. Defendant's Assistant-Secretary, who does not appear from the information in the record to have been the representative who dealt with Schulman, had stated in an affidavit that plaintiff solicited the purchase order from offices it maintained in New York and had executed the contract there.

3. Defendant stipulated to receipt of notice.

We agree with plaintiff that the instant case falls within the language of N.C.G.S. § 55-145(a)(1). The cause of action arose out of a breach of contract. Under North Carolina law, a contract is made in the place where the last act necessary to make it binding occurred. *Goldman v. Parkland*, 277 N.C. 223, 176 S.E. 2d 784 (1970). In the instant case, this act was the acceptance by the plaintiff of defendant's offer. Therefore, the contract was "made in this State." Additionally, it was also "to be performed in this State."

[2] Plaintiff argues that our inquiry should end here, that where a transaction falls within the language of N.C.G.S. § 55-145, jurisdiction automatically follows. This Court, however, has previously held that *in personam* jurisdiction pursuant to N.C.G.S. § 55-145 must not be exercised in a way that violates the due process clause. *See Goldman v. Parkland*, 277 N.C. 223, 176 S.E. 2d 784; *Byham v. House Corp.*, 265 N.C. 50, 143 S.E. 2d 225 (1965). We have also held in considering N.C.G.S. § 1-75.4 that the requirements of due process, not the words of the long-arm statute, are the ultimate test of jurisdiction over a non-resident defendant, *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E. 2d 676 (1974), and, following the mandate of the United States Supreme Court, we have rejected any *per se* rule of long-arm jurisdiction, *see Buying Group v. Coleman*, 296 N.C. 510, 251 S.E. 2d 610 (1979). Accordingly, we reject plaintiff's contention and proceed to the second step of our analysis.

[3] To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 102 (1945) (quoting from *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L.Ed. 278, 283 (1940)). In each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice. *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298 (1958). This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there."

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 62 L.Ed. 2d 490, 501 (1980).

The United States Supreme Court has noted two types of long-arm jurisdiction. Where the controversy arises out of the defendant's contacts with the forum state, the state is said to be exercising "specific" jurisdiction. In this situation, the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction. Where the controversy is unrelated to the defendant's activities within the forum, due process may nevertheless be satisfied if there are "sufficient contacts" between the forum and the defendant. *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408, 414, 80 L.Ed. 2d 404, 411 (1984). The Supreme Court has also said that for purposes of asserting "specific" jurisdiction, a defendant has "fair warning" that he may be sued in a state for injuries arising from activities that he "purposefully directed" toward that state's residents. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 85 L.Ed. 2d 528, 540-41 (1985). Because the controversy in this case arises out of defendant's contacts with this State, specific jurisdiction is the type sought here. Our focus should therefore be upon the relationship among the defendant, this State, and the cause of action.

Our Court of Appeals concluded that defendant had insufficient contacts with North Carolina to satisfy the requirements of due process. In reaching its conclusion, the court apparently relied upon the facts that only one contract was involved, defendant was never physically present in this jurisdiction in connection with this transaction, and defendant's other contacts with this State appear to be insubstantial.[4]

---

4. Plaintiff's president stated in an affidavit that defendant:

1) sold merchandise to Family Dollar and Super Dollar Stores located in North Carolina,

2) sold to other retailers with stores in North Carolina, and

3) sold to a national chain with stores in North Carolina.

Even the first averment fails to state clearly that defendant was dealing directly with North Carolina entities.

Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 85 L.Ed. 2d 528, 545; *McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L.Ed. 2d 223 (1957); *Goldman v. Parkland*, 277 N.C. 223, 176 S.E. 2d 784. In the instant case, the defendant made an offer to plaintiff whom defendant knew to be located in North Carolina. Plaintiff accepted the offer in North Carolina. The contract was therefore made in North Carolina, as we discussed earlier. The contract was for specially manufactured goods, shirts in this case, for which plaintiff was to be paid over $44,000. Defendant was told that the shirts would be cut in North Carolina, and defendant also agreed to send its personal labels to plaintiff in North Carolina for plaintiff to attach to the shirts. Defendant was thus aware that the contract was going to be substantially performed in this State. The shirts were in fact manufactured in and shipped from this State. After defendant contacted the plaintiff to complain about the shirts, defendant then returned them to this State. We therefore conclude that the contract between defendant and plaintiff had a "substantial connection" with this State. *See Goldman v. Parkland*, 277 N.C. 223, 176 S.E. 2d 784. We further conclude that by making an offer to the North Carolina plaintiff to enter a contract made in this State and having a substantial connection with it, defendant purposefully availed itself of the protection and benefits of our laws.

Other factors involved in this litigation also support a conclusion that jurisdiction is permissible in this case. It is generally conceded that a state has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 85 L.Ed. 2d 528, 541. We take judicial notice of the fact that textile manufacturing is an important industry in North Carolina, giving North Carolina a special interest in this litigation. We also note that in actions governed by the Uniform Commercial Code, N.C.G.S. § 25-1-105 (1965) provides that Chapter 25 applies to all transactions "bearing an appropriate relation to this State." *See Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405

(1982). Therefore, in the instant case, North Carolina law would be the law to be applied. We note further that defendant has failed to show any other reason why the exercise of such jurisdiction would be unfair. North Carolina is certainly a convenient forum for this litigation in terms of witnesses and location of events. Nor has defendant pointed to any disparity between plaintiff and itself which might render the exercise of personal jurisdiction over it unfair.

In conclusion, after examining the relationship among the defendant, the forum, and the cause of action, we find sufficient minimum contacts to justify the exercise of personal jurisdiction over the defendant in this case without violating the due process clause.

Defendant, however, argues strongly that personal jurisdiction is improper because it took no action *in* North Carolina. Lack of action by defendant *in* a jurisdiction is not now fatal to the exercise of long-arm jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L.Ed. 2d 528; *McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L.Ed. 2d 223. As the Supreme Court explained in *McGee* almost thirty years ago,

> Looking back over [the] long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*McGee*, 355 U.S. at 222-23, 2 L.Ed. 2d at 226. More recently, the Court commented, "The historical developments noted in *McGee*, of course, have only accelerated in the generation since that case was decided." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 62 L.Ed. 2d 490, 498-99.

Defendant also contends that its case is indistinguishable from *Sola Basic Industries v. Electric Membership Corp.*, 70 N.C. App. 737, 321 S.E. 2d 28 (1984), wherein our Court of Appeals held that personal jurisdiction was not proper. In *Sola*, plaintiff, a Wisconsin corporation with a plant in Goldsboro, North Carolina, sold defendant, a rural electric corporation operating only in Indiana, a transformer. The contract of sale was negotiated in Indiana. Three years later, the transformer broke down. Defendant, believing the necessary repairs were covered under warranties in the original contract, arranged with the plaintiff for the transformer to be taken to plaintiff's plant in North Carolina. Only after the transformer was in North Carolina did the plaintiff notify defendant that the original warranty had expired and defendant would need to pay for any repairs. The parties then entered into a contract covering the repairs. When defendant later refused to pay for the repairs, plaintiff sued in North Carolina. Defendant had no other contacts with this State. The Court of Appeals held that under these circumstances, there were insufficient minimum contacts between defendant and North Carolina to justify the exercise of personal jurisdiction over the defendant.

We find that the facts in *Sola* are distinguishable from the facts in the instant case. In *Sola*, defendant's connection with North Carolina was incidental to the earlier contract negotiated in Indiana with plaintiff Wisconsin corporation. From the facts disclosed in the Court of Appeals' opinion, apparently no essential part of this original contract took place in North Carolina. When defendant agreed to plaintiff's taking the transformer to this State for repairs, defendant believed that the repairs were covered under the original contract. Defendant's subsequent act in agreeing to pay for repairs performed here only took place after the transformer had been taken to plaintiff's plant and plaintiff was refusing to repair it unless defendant agreed to pay. Under these circumstances, defendant's act could not fairly be characterized as voluntarily availing itself of the benefits and protections of our State's laws. *Cf. Chung v. NANA Development Corp.*, 783 F. 2d 1124 (4th Cir. 1986). In the instant case, however, the record is clear that defendant voluntarily entered into a contract with a substantial connection with this State. We believe the facts in this case more nearly parallel those in *Time Corp. v. Encounter, Inc.*, 50 N.C. App. 467, 274 S.E. 2d 391 (1981), and *Equity Associ-*

*ates v. Society for Savings,* 31 N.C. App. 182, 228 S.E. 2d 761 (1976), *cert. denied,* 291 N.C. 711, 232 S.E. 2d 203 (1977), where our Court of Appeals found the exercise of personal jurisdiction over out-of-state defendants to be proper.

For all of the reasons discussed herein, we reverse the decision of the Court of Appeals and remand this case to that court in order that the decision of the Superior Court, Wake County, may be reinstated.

Reversed and remanded.

Justices PARKER and BROWNING did not participate in the consideration or decision of this case.