IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1307

Filed: 1 August 2017

Mecklenburg County, No. 16 CVS 3613

MOLLY SCHWARZ, Plaintiff,

v.

ST. JUDE MEDICAL, INC., ST. JUDE MEDICAL S.C., INC., DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM, INC., ERIC DELISSIO, TED COLE, and THOMAS J. WEBER, JR., Defendants.

Appeal by plaintiff from order entered 21 September 2016 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 2017.

> *Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and Harold L. Kennedy III, for plaintiff-appellant.*

> *Parker Poe Adams & Bernstein LLP, by Keith M. Weddington, and Dorsey & Whitney LLP, by Meghan Des Lauriers, for defendant-appellees St. Jude Medical, Inc. and St. Jude Medical S.C., Inc.*

ELMORE, Judge.

The Mecklenburg County Superior Court dismissed plaintiff's complaint against her former employer, St. Jude Medical S.C., Inc., and its parent company, St. Jude Medical, Inc., because the forum-selection clause in the employment agreement designates Ramsey County, Minnesota, as the exclusive venue to litigate plaintiff's claims. Pursuant to N.C. Gen. Stat. § 22B-3 (2015), "any provision in a contract

entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." Because the employment agreement was "entered into in North Carolina," not Texas as the trial court concluded, the forum-selection clause is void and unenforceable under N.C. Gen. Stat. § 22B-3. Reversed.

## I. Background

Plaintiff Molly Schwarz is a resident of Mecklenburg County. Defendants St. Jude Medical and St. Jude Medical S.C. are Minnesota corporations doing business in Mecklenburg County. St. Jude Medical S.C. has its principal office in Austin, Texas.

Plaintiff was employed as a clinical specialist with St. Jude Medical S.C. from 2004 to 2009. St. Jude Medical S.C. employs a sales team that sells medical devices to hospitals, clinics, and other medical providers. In her role, plaintiff supported the sales representatives and their provider accounts, including Duke University and Duke University Health Systems, Inc. (collectively, Duke), where Dr. Thomas J. Weber Jr. was employed.

After her first term of employment ended, plaintiff re-applied for the same position. On 27 August 2012, she executed an at-will employment agreement with St. Jude Medical S.C. and began working. The agreement addresses standard

employment issues including duties, compensation, and termination. It also contains

the following choice-of-law and forum-selection provisions:

> Governing Law. This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction.
>
> Exclusive Jurisdiction. All actions or proceedings relating to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota. Employee submits to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked. Employee understands that Employee is surrendering the right to bring litigation against SJMSC outside the State of Minnesota.

Plaintiff signed the agreement in North Carolina and faxed it to a representative of

St. Jude Medical S.C. in Austin, Texas, where, on 13 September 2012, Keith Boettiger

executed the agreement on behalf of St. Jude Medical S.C. By its terms, the

agreement was effective as of 4 September 2012.

Plaintiff's sales team worked primarily with Duke. In July 2014, plaintiff

reported to management that Dr. Weber was involved in an extramarital affair with

one of plaintiff's co-workers. When Ted Cole, a manager for St. Jude Medical S.C.,

spoke with Dr. Weber about the allegations, Dr. Weber was "irate." He told Cole that

plaintiff was in his clinic "talking to his staff members around patients" about his

personal life. Dr. Weber demanded a letter of apology and informed Cole that plaintiff

- 3 -

was no longer welcome in the Duke-Raleigh system, which comprised more than 85 percent of St. Jude Medical S.C.'s Raleigh territory.

Seven months later, on Friday, 27 February 2015, Cole received an e-mail from a patient who reported feeling "very uncomfortable" during an appointment with plaintiff. The patient complained that plaintiff read the film backwards, exposed the patient to unnecessary radiation, and several times during three visits she was "loud," "argumentative," and asked "the same questions over and over again." Cole forwarded the e-mail to his manager, Eric Delissio, who in turn sent the e-mail to human resources. Plaintiff was terminated the following Monday.

Plaintiff filed a complaint in Mecklenburg County Superior Court alleging claims of wrongful discharge from employment in violation of public policy and libel against St. Jude Medical and St. Jude Medical S.C.; tortious interference with contractual rights and libel against Cole and Delissio; and tortious interference with contractual rights against Duke and Dr. Weber.

St. Jude Medical and St. Jude Medical S.C. (collectively, the St. Jude defendants) moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(3) of the North Carolina Rules of Civil Procedure.[1] The St. Jude defendants argued that venue in Mecklenburg County was improper because the forum-selection clause in the employment agreement provides that all claims related to the agreement must be

---

[1] The St. Jude defendants also moved to dismiss plaintiff's wrongful discharge and libel claims pursuant to Rule 12(b)(6).

litigated in the state or federal courts located in Ramsey County, Minnesota. Although out-of-state forum-selection clauses are void and unenforceable in North Carolina, *see* N.C. Gen. Stat. § 22B-3, the St. Jude defendants averred that the contract was not formed in this State.

The trial court granted the St. Jude defendants' motion to dismiss for improper venue. The court concluded that the agreement was formed in Texas, rather than North Carolina, because Boettiger's signature was the "the last essential act." As such, N.C. Gen. Stat. § 22B-3 did not apply and the forum-selection clause was valid, reasonable, and enforceable. The court also concluded that requiring plaintiff to prosecute her claims in Minnesota "is not seriously inconvenient" and would not effectively deprive her of her day in court. Plaintiff timely appeals.

## II. Discussion

A. Jurisdiction

We first address whether plaintiff has vested jurisdiction in this Court to review her appeal on the merits. "An order . . . granting a motion to dismiss certain claims in an action, while leaving other claims in the action to go forward, is plainly an interlocutory order." *Pratt v. Staton*, 147 N.C. App. 771, 773, 556 S.E.2d 621, 623 (2001). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C.

357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). "Generally, there is no right of immediate appeal from interlocutory orders or judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). An appeal may be taken only from those "judgments and orders as are designated by the statute regulating the right of appeal." *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381; *see, e.g.*, N.C. Gen. Stat. § 1-277 (2015); *id.* § 1A-1, Rule 54(b); *id.* § 7A-27(b).

Plaintiff appeals from an interlocutory order dismissing her claims against the St. Jude defendants while allowing her other claims to move forward against defendants Cole, Delissio, Duke, and Dr. Weber. While the order was "a final judgment as to one or more but fewer than all of the claims or parties," N.C. Gen. Stat. § 1A-1, Rule 54(b), the trial court did not certify the order for immediate appellate review. By virtue of the substantial right doctrine, however, plaintiff has provided an alternative basis to appeal the interlocutory order.

First, as plaintiff correctly notes, "our case law establishes firmly that an appeal from a motion to dismiss for improper venue based upon a jurisdiction or venue selection clause dispute deprives the appellant of a substantial right that would be lost." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566 n.1, 566 S.E.2d 160, 161 n.1 (2002) (citations omitted), *quoted in Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 641, 574 S.E.2d 31, 33 (2002); *see also US Chem. Storage, LLC v. Berto Constr., Inc.*, No. COA16-628, slip op. at 5 (N.C. Ct. App. May

2, 2017) ("[T]he validity of a forum selection clause constitutes a substantial right." (citing *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 776, 501 S.E.2d 353, 355 (1998))). Prior decisions have applied this principle to review the denial of a motion to dismiss for improper venue. *See, e.g.*, *Hickox v. R&G Grp. Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003) ("Although a denial of a motion to dismiss is an interlocutory order, where the issue pertains to applying a forum selection clause, our case law establishes that defendant may nevertheless immediately appeal the order because to hold otherwise would deprive him of a substantial right." (citation omitted)). The same substantial right is implicated by the court's partial dismissal in this case because an "order denying a party the right to have the case heard in the proper court would work an injury to the aggrieved party which could not be corrected if no appeal was allowed before the final judgment." *DesMarais v. Dimmette*, 70 N.C. App. 134, 136, 318 S.E.2d 887, 889 (1984).

Second, "[a] party has a substantial right to avoid two trials on the same facts in different forums where the results would conflict." *Clements v. Clements ex rel. Craige*, 219 N.C. App. 581, 585, 725 S.E.2d 373, 376 (2012) (citing *Hamby v. Profile Prods., L.L.C.,* 361 N.C. 630, 639, 652 S.E.2d 231, 237 (2007)), *quoted in Callanan v. Walsh*, 228 N.C. App. 18, 21, 743 S.E.2d 686, 689 (2013). Plaintiff's claims against defendants arise out of the same set of factual circumstances surrounding her termination. The libel claim against Cole and Delissio is pending in Mecklenburg

County Superior Court but the libel claim against the St. Jude defendants, alleged on the theory of *respondeat superior*, was dismissed for improper venue. Dismissing the appeal and allowing plaintiff to prosecute the same claims in different forums "creat[es] the possibility of inconsistent verdicts." *Estate of Harvey v. Kore-Kut, Inc.*, 180 N.C. App. 195, 198, 636 S.E.2d 210, 212 (2006). Because plaintiff has shown that the interlocutory order affects a substantial right that would be jeopardized absent review prior to a final judgment on the merits, *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736, we have jurisdiction over plaintiff's appeal.

B. Dismissal for Improper Venue

### 1. Claims "Relating to" the Employment Agreement

Plaintiff first argues that the trial court erred in dismissing the complaint under Rule 12(b)(3) because her tort claims against the St. Jude defendants are not "related to" the employment agreement and are not subject to the forum-selection clause.

Under our choice-of-law principles, "the interpretation of a contract is governed by the law of the place where the contract was made." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). But if "parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Id.*; *see, e.g.*, *Tohato, Inc. v. Pinewild Mgmt., Inc.*, 128 N.C. App. 386, 390, 496 S.E.2d 800, 803 (1998)

(applying Texas law to determine enforceability of arbitration clause where choice-of law provision stipulated contract "shall be governed by and construed under the laws of the State of Texas"). By virtue of the choice-of law provision in the agreement, this issue involves the application of Minnesota law.

Whether a forum-selection clause applies to a plaintiff's claim is a question of law, reviewed by the Minnesota courts *de novo*. *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 907 (Minn. Ct. App. 2002) (citation omitted). "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) (citation omitted) (internal quotation marks omitted), *cited with approval in Alpha Sys. Integration, Inc.*, 646 N.W.2d at 907, 908 (examining language of contract to determine whether forum-selection clause applied to claims arising out of agreement).

The forum-selection clause at issue is broadly worded to encompass "all actions or proceedings *relating to*" the agreement. (Emphasis added.) "Relating to" implies merely "some connection or relation." Webster's New World College Dictionary 1225 (5th ed. 2014). While plaintiff's claims may sound in tort, they still have "some connection" to the employment agreement. Plaintiff's wrongful discharge claim directly implicates the employer-employee relationship created by the agreement.

- 9 -

The same can be said of the libel claim, in which plaintiff alleged that "to instigate the termination of plaintiff from St. Jude Medical S.C.," Cole and Delissio published "false and defamatory statements" implying plaintiff was incompetent. As additional evidence of its breadth, the clause provides: "Employee understands that Employee is surrendering the right to bring litigation against SJMSC outside the state of Minnesota." Such language indicates that *all* claims by an employee against the employer are subject to the forum-selection clause whether in contract, tort, or otherwise. Because the clause reflects an intention to litigate plaintiff's claims in Minnesota, the trial court did not err in finding implicitly that the claims are subject to the forum-selection clause.

*2. Forum-Selection Clause*

Next, plaintiff argues that the forum-selection clause is void and unenforceable pursuant to N.C. Gen. Stat. § 22B-3, which provides in relevant part:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.

N.C. Gen. Stat. § 22B-3 (2015). Plaintiff maintains that the employment agreement was "entered into in North Carolina" because her signature was the last act necessary to the formation of the contract. She contends, therefore, that the forum-selection clause is void and enforceable as a matter of law, and that venue in Mecklenburg

County was proper.

As previously noted, plaintiff and the St. Jude defendants agreed that the contract "will be governed by the laws of the state of Minnesota." Nevertheless, our courts have not honored choice-of-law provisions in contracts when

> "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law in the absence of an effective choice of law by the parties."

*Cable Tel Servs., Inc.*, 154 N.C. App. at 643, 574 S.E.2d at 34 (quoting Restatement (Second) of Conflict of Laws § 187 (1971), *cited with approval in Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980), *and Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d 623, 625 (2000)). Because the application of Minnesota law would be contrary to a fundamental policy of this state, which has a materially greater interest in determining the validity of the forum-selection clause, we apply North Carolina law to decide the place of contract formation. *See Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 186, 606 S.E.2d 728, 732 (2005) (applying North Carolina law in reviewing place of contract formation to resolve validity of out-of-state forum-selection clause).

As a "determination requiring the . . . application of legal principles," *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted), the place of contract formation is a conclusion of law, reviewed *de novo* on appeal, *see,*

*e.g.*, *Goldman v. Parkland of Dallas, Inc.*, 277 N.C. 223, 227, 176 S.E.2d 784, 787 (1970).

"The essence of any contract is the mutual assent of both parties to the terms of the agreement . . . ." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) (citing *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 161 S.E.2d 453 (1968)); *see also* Restatement (Second) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange . . . ."); *id.* § 3 ("An agreement is a manifestation of mutual assent on the part of two or more persons.").

Mutual assent of the parties "is operative only to the extent that it is manifested." Restatement (Second) of Contracts § 18 cmt. a. The manifestation of mutual assent "requires that each party either make a promise or begin or render a performance," *id.* § 18, and "is normally accomplished through the mechanism of offer and acceptance," *Snyder*, 300 N.C. at 218, 266 S.E.2d at 602; *see also Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) ("[A]ssent . . . requires an offer and acceptance in the exact terms."); *T.C. May Co. v. Menzies Shoe Co.*, 184 N.C. 150, 152, 113 S.E. 593, 593 (1922) ("[T]he mutual assent of the parties . . . generally results from an offer on the one side and acceptance on the other."). As the Restatement instructs:

> Ordinarily one party, by making an offer, assents in
> advance; the other, upon learning of the offer, assents by

accepting it and thereby forms the contract. The offer may be communicated directly or through an agent; but information received by one party that another is willing to enter into a bargain is not necessarily an offer. The test is whether the offer is so made as to justify the accepting party in a belief that the offer is made to him.

Restatement (Second) of Contracts § 23 cmt. a; *see also T.C. May Co.*, 184 N.C. at 152, 113 S.E. at 593–94 ("The offer . . . is a mere proposal to enter into the agreement, . . . but when it is communicated, and shows an intent to assume liability, and is understood and accepted by the party to whom it is made, it becomes at once equally binding upon the promisor and the promisee."); 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 4:3 (4th ed. 2007) ("[I]t is typically the case that one making an offer assents in advance to the proposed bargain, after which all that is required to complete the mutual assent necessary is the assent of the offeree." (footnote omitted)).

The manifestation of mutual assent is judged by an objective standard:

The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the language employed by them. The undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject, as mental assent to the promises in a contract is

> not essential. . . . The question whether a contract has been made must be determined from a consideration of the expressed intention of the parties—that is, from a consideration of their words and acts. . . . [T]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962) (citations omitted) (internal quotation marks omitted); *see also* Restatement (Second) of Contracts § 2 cmt. b ("The phrase 'manifestation of intention' adopts an external or objective standard for interpreting conduct . . . . A promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct."); Williston & Lord, *supra*, § 4:1 ("In the formation of contracts, however, it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties."); *id.* § 4:2 ("As long as the conduct of a party is volitional and that party knows or reasonably ought to know that the other party might reasonably infer from the conduct an assent to contract, such conduct will amount to a manifestation of assent.").

"Under North Carolina law, a contract is made in the place where the last act necessary to make it binding occurred." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986); *see also Thomas v. Overland Exp., Inc.*, 101

N.C. App. 90, 97, 398 S.E.2d 921, 926 (1990) (noting that our courts employ the "last act" test to determine where a contract was made) (citing *Fast v. Gulley*, 271 N.C. 208, 155 S.E.2d 507 (1967)).

The last act necessary to contract formation usually occurs at the place of acceptance. In *Goldman*, the defendant, a Texas corporation with its principal office in Dallas, sent the plaintiff, a North Carolina resident, a letter detailing the terms of a proposed employment contract. 277 N.C. at 225–26, 176 S.E.2d at 786. Upon receipt, the plaintiff signed the contract in Greensboro and mailed it to the defendant in Dallas. *Id.* at 226, 176 S.E.2d at 786. Our Supreme Court determined that the contract was made in North Carolina: "The letter . . . constituted an offer. The final act necessary to make it a binding agreement was its acceptance, which was done by the plaintiff by signing it in Greensboro . . . and there depositing it in the United States mail properly addressed to defendant." *Id.* at 226–27, 176 S.E.2d at 787.

Relying on *Goldman*, our Supreme Court reached a similar conclusion in *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 785. The defendant, a clothing distributor incorporated in New Jersey with its principal place of business in New York City, submitted to the plaintiff, a clothing manufacturer in North Carolina, a purchase order for shirts. *Id.* at 362–63, 348 S.E.2d at 784. The plaintiff accepted the order "by sending the shirts to defendant within the time specified." *Id.* at 363, 348 S.E.2d at 784. Resolving the jurisdictional issue in a subsequent breach of contract claim,

filed by the plaintiff in Wake County Superior Court, the Supreme Court concluded that the contract was "made in this State" because the plaintiff's acceptance in North Carolina was the "last act necessary" to form a binding contract. *Id.* at 365, 348 S.E.2d at 785.

In some instances, a contract may not be formed until the offeror manifests assent through a counter-signature. In *Parson v. Oasis Legal Finance, LLC*, 214 N.C. App. 125, 715 S.E.2d 240 (2011), the plaintiff entered into an agreement with the defendant for an advance of funds to pay the plaintiff's legal fees. *Id.* at 126, 715 S.E.2d at 241. The plaintiff completed a funding application and faxed it to the defendant. *Id.* at 130, 715 S.E.2d at 243. On the same day, the defendant faxed the plaintiff an unsigned draft agreement for a $3,000 advance. *Id.* Notably, the agreement asked how the plaintiff would like to receive his requested amount, i.e., "by check or as requested by the purchaser," and included a release allowing the defendant to receive a copy of the plaintiff's credit report. *Id.* at 130, 715 S.E.2d at 244. The plaintiff signed the agreement and faxed it back to the defendant. *Id.* Upon receipt, the defendant's representative signed the agreement in Illinois and then mailed the plaintiff a check for $2,972. *Id.* Under the circumstances, the Court concluded: "The last act essential to . . . affirming the mutual assent of both parties to the terms of the agreement was the signing of the agreement by [the defendant's] representative." *Id.* Because the defendant's representative signed the agreement in

Illinois, the Court determined that the contract was made in Illinois. *Id.* at 130–31, 715 S.E.2d at 244 (citing *Bundy v. Comm. Credit Co.*, 200 N.C. 511, 157 S.E. 860 (1931); *Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733).

Other decisions have distinguished between acts which are necessary to form a binding obligation and those which are merely administrative. In *Murray v. Ahlstrom Industrial Holdings, Inc.*, 131 N.C. App. 294, 506 S.E.2d 724 (1998), this Court determined that the defendant made an offer of employment when it telephoned the plaintiff at his home in North Carolina. *Id.* at 296–97, 506 S.E.2d at 726. Upon the plaintiff's acceptance, the defendant informed him that he "was hired and that he should report to work in Corinth, Mississippi immediately." *Id.* at 297, 506 S.E.2d at 726. Despite the incomplete employment paperwork, the Court concluded:

> At this point the contract for employment was complete. Relying upon this employment contract, plaintiff packed up his family and moved to Mississippi for the duration of the project. Although the paperwork filled out by plaintiff was required before he could begin work, this seems to be, and in fact was admitted by [the defendant] to be, mostly administrative. The paperwork appears to be more of a consummation of the employment relationship than the "last act" required to make it a binding obligation.

*Id.* at 297, 506 S.E.2d at 726–27 (citing *Warren v. Dixon & Christopher Co.*, 252 N.C. 534, 114 S.E.2d 250 (1960)). Because the plaintiff's acceptance was the last act necessary to form a binding obligation, the Court concluded that the contract was

made in North Carolina. *Id.* at 297, 506 S.E.2d at 727; *cf. Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733 (concluding that franchise agreement was made in Florida because once terms were discussed with the defendant's representatives and form agreement was signed by the plaintiffs in North Carolina, agreement was returned to Florida where it was signed by the defendant's president).

Analogizing to *Goldman* and *Tom Togs*, we agree with plaintiff that the contract in this case was made in North Carolina. By presenting the employment agreement to plaintiff on her first day at work, St. Jude Medical S.C. undeniably signaled a willingness to enter into a bargain, offering plaintiff employment under the terms set forth in the agreement. *See* Restatement (Second) of Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). In contrast to *Parson*, where the plaintiff had to sign a release of his credit report and indicate on the draft agreement his desired method to receive funds, here plaintiff was only required to sign the proposed agreement. There were no terms left to negotiate. *Cf.* Restatement (Second) of Contracts § 33 ("The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."). Because plaintiff did not propose amended or additional terms, her signature and delivery constituted acceptance.

Defendant maintains that its blank signature line on the last page of the agreement is evidence that plaintiff's acceptance would not conclude the deal; the agreement required further assent by defendant. Based on the language in the agreement and the conduct of the parties, however, defendant's signature was merely a "consummation of the employment relationship," as the Court concluded in *Murray*, 131 N.C. App. at 297, 506 S.E.2d at 727, instead of the last act necessary to form a binding agreement. The agreement contains no clause similar to the one in *Bundy*, 200 N.C. at 513, 157 S.E. at 862, which provided: "This agreement shall not become effective until accepted by its duly authorized officers of [the defendant] at Baltimore, Md." The fact that plaintiff worked for nearly two weeks before Boettiger signed the agreement, moreover, indicates that defendant intended to be bound when plaintiff reported to work and executed the agreement. Defendant's manifestation of assent is found in its proposal of the agreement to plaintiff which, upon acceptance, became binding upon both parties. On these facts, we conclude that the contract was made in North Carolina and the forum-selection clause is void and unenforceable under N.C. Gen. Stat. § 22B-3.

### III. Conclusion

The trial court erred in dismissing plaintiff's claims against the St. Jude defendants pursuant to Rule 12(b)(3) of the North Carolina Rules of Civil Procedure. The last act necessary to the formation of the employment agreement was plaintiff's

signature and delivery in North Carolina rather than Boettiger's signature in Texas, which can be more aptly described as a "consummation of the employment relationship." Because the contract was "entered into in North Carolina," the Minnesota forum-selection clause is void and unenforceable pursuant to N.C. Gen. Stat. § 22B-3. We reverse the court's order dismissing plaintiff's claims against the St. Jude defendants for improper venue.

REVERSED.

Judge DILLON concurs.

Judge ARROWOOD concurs by separate opinion.

No. COA16-1307– *Schwarz v. St. Jude Med., Inc.*

ARROWOOD, Judge, concurring by separate opinion.

I concur in the majority opinion that the Minnesota forum-selection clause is void and unenforceable pursuant to N.C. Gen. Stat. § 22B-3 because the contract was entered into in North Carolina, and therefore, that the trial court's order dismissing plaintiff's complaint must be reversed. However, I reach that result by a somewhat different analysis. I believe that the contract was entered into in North Carolina for the following reasons: When defendant made its offer of employment to plaintiff, the proposed Employment Agreement contained the following language:

> C. <u>Modification Prior to Full Execution</u>. No modifications may be made to the terms of this Agreement prior to the full execution of the Agreement without the prior approval of an authorized representative of SJMSC.

The Employment Agreement also provided that:

> TO WITNESS THEIR AGREEMENT THE PARTIES HAVE SIGNED BELOW AS OF THE FIRST DAY WRITTEN ABOVE.

The "first day written above" was designated as 4 September 2012.

"The question whether a contract has been made must be determined from a consideration of the expressed intention of the parties – that is from a consideration of their words and acts." *Normile v. Miller*, 313 N.C. 98, 107, 326 S.E.2d 11, 17 (1985) (citation omitted). Here, it is undisputed that plaintiff failed to challenge any terms of the Employment Agreement or propose any additional terms. In addition, there does not appear to be any dispute in the record that plaintiff commenced work on the

date set forth in the Agreement and that the parties operated under the terms of the proposed Employment Agreement for more than a week prior to the signing of the Employment Agreement by defendant's representative. The outward expressions of both plaintiff and defendant demonstrated that a mutual agreement had been established as of 4 September 2012. In conclusion, I believe that the non-negotiable language of the Employment Agreement, when combined with the Agreement's effective date language and the actions of both parties, shows that the contract was formed no later than when plaintiff commenced work and that the last act necessary for formation of the contract occurred in North Carolina.