KURT HART SAXON, Plaintiff v. COURTNEY SMITH AND COURTNEY SMITH, LTD., Defendants

No. COA95-1312

(Filed 21 January 1997)

1. **Appeal and Error § 112 (NCI4th)— jurisdiction—motion to dismiss—right of immediate appeal**

    An interested party has the right of immediate appeal from an adverse ruling as to jurisdiction over the person or property of defendant, but such appeal is limited to a determination of whether North Carolina statutes permit our courts to entertain the action and, if so, whether that violates due process. N.C.G.S. § 1-277(b).

    **Am Jur 2d, Appellate Review § 147.**

    **Appealability of order relating to transfer, on jurisdictional grounds, of cause from one state court to another. 78 ALR2d 1204.**

2. **Courts § 15.2 (NCI4th)— personal jurisdiction—sale of Iron Frame Henry rifle—publication of newsletter— actions for libel and slander, abuse of process, and intentional infliction of emotional distress**

    The trial court did not err in an action for libel and slander, malicious prosecution, abuse of process, and intentional infliction of emotional distress arising from a dispute over the purchase of a collectible gun and the publication of a newsletter by denying defendants' motion to dismiss for lack of jurisdiction

SAXON v. SMITH

[125 N.C. App. 163 (1997)]

where plaintiff's claims may be properly characterized as alleging injuries to person or property within the purview of N.C.G.S. § 1-75.4; libel and slander is generally held to occur wherever the offending material is circulated and defendants admitted that the newsletter which contained the allegedly defamatory material was distributed to approximately 100 residents in North Carolina; abuse of process occurs within the jurisdiction in which the process is served, notwithstanding that it may have originated in another jurisdiction and, although defendant contends that he simply alerted Virginia authorities to plaintiff's actions, the trial court's unchallenged findings were that defendants communicated complaints and information regarding plaintiff to law enforcement officials in Virginia which caused North Carolina criminal process to be issued; as to the intentional infliction of emotional distress and malicious prosecution claims, defendants' distribution of the newsletter in North Carolina and registering of a complaint with law enforcement authorities were actions directed at plaintiff within this state and the alleged resultant harm occurred in North Carolina.

**Am Jur 2d, Process §§ 178, 186-194.**

**In personam jurisdiction, in libel and slander action, over nonresident who mailed allegedly defamatory letter from outside state. 83 ALR4th 1006.**

3. **Courts § 14 (NCI4th)— personal jurisdiction—sale of Iron Frame Henry rifle—publication of newsletter—minimum contacts**

The exercise of personal jurisdiction over Virginia defendants on claims for libel and slander, malicious prosecution, abuse of process, and intentional infliction of emotional distress arising from a dispute over the purchase of a collectible gun and the publication of a newsletter did not violate due process where the quantity of defendants' contacts with North Carolina may not have been extensive, but was sufficient for purposes of N.C.G.S. § 1-75.4, especially considering that the alleged injury under each claim was suffered by plaintiff within North Carolina.

**Am Jur 2d, Process §§ 178, 186-194.**

**Propriety, under due process clause of Fourteenth Amendment, of forum state's assertion or exercise of jurisdiction over nonresident defendant in defamation action. 79 L. Ed. 2d 992.**

4. **Courts § 19 (NCI4th)— Virginia action for fraud and breach of warranty—North Carolina claims including defamation—N.C. stay denied—no abuse of process**

There was no abuse of discretion where a trial court denied a motion to stay a North Carolina action pending resolution of a Virginia complaint. N.C.G.S. § 1-75.12(a).

**Am Jur 2d, Courts § 95.**

**Stay of civil proceedings pending determination of action in another state or country. 19 ALR2d 301.**

Appeal by defendant from order entered 17 August 1995 by Judge John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 August 1996.

*James, McElroy & Diehl, P.A., by Ann L. Hester and Edward T. Hinson, Jr., for plaintiff-appellee.*

*Morris, York, Williams, Surles, & Brearley, by John P. Barringer and Joseph N. Crosswhite, for Defendant-appellant.*

JOHN, Judge.

Defendants appeal the trial court's denial of their motions to dismiss for lack of personal jurisdiction and to stay prosecution pending conclusion of related litigation in Virginia. We affirm.

The allegations of plaintiff's complaint, defendants' answer, and discovery conducted by the parties reflect the following pertinent information: Plaintiff, a resident of Mecklenburg County, North Carolina, is an antique firearms dealer, while defendant Courtney Smith (Smith) is a gun dealer who operates defendant Courtney Smith, Ltd., in Henrico County, Virginia. Plaintiff made purchases from defendants who were vendors at gun shows in Mecklenburg County, North Carolina in August 1993 and February 1994. At a February 1993 gun show in Richmond, Virginia, plaintiff first mentioned to Smith that he owned a rifle which an expert had identified to plaintiff as an Iron Frame Henry Rifle (the rifle). Smith subsequently contacted plaintiff, both by telephone and letter from Virginia and, following negotiations, purchased the rifle for $40,000. The gun was delivered by plaintiff to Smith at a gun show in Richmond. Thereafter, Smith solicited the opinion of firearms examiner Eric Vaule and was informed the rifle was not an original Iron Frame Henry. According to plaintiff, a second appraiser, Norm Vegley,

SAXON v. SMITH

[125 N.C. App. 163 (1997)]

declared the gun to be an authentic Iron Frame Henry rifle that had been "restored." Smith demanded that the purchase price be refunded, but plaintiff refused.

In May 1994, Smith initiated a civil action against plaintiff in Henrico County, Virginia, asserting fraud, breach of warranty, and breach of duty to deal in good faith and fair dealing. At filing of the parties' appellate briefs, this matter remained pending in the Virginia trial court.

In addition, as the result of Smith's complaint to the Henrico County, Virginia police department, a warrant was issued for plaintiff's arrest. Plaintiff alleged law enforcement officials were not informed two experts had declared the rifle to be authentic, but that Smith had represented plaintiff to be armed and dangerous. Plaintiff also asserted Smith encouraged Virginia law enforcement officers to "arrange for a bond appropriately [*sic.*] to the amount indicated by the fraud," *i.e.*, that Smith had attempted to use the criminal process to secure payment of his alleged claim. A fugitive arrest warrant was eventually obtained against plaintiff which was served by the Matthews, North Carolina Police Department. All charges against plaintiff were ultimately dropped or dismissed by Henrico County.

Plaintiff further alleged defendants published the following report in the September or November 1994 issue of their quarterly newsletter, entitled "News, Views and Just Things":

> THE GREAT 40 thou FRAUD . . . most of you now know or have heard of the big rip off involving me with the purchase of a fake gun from one our southern brothers. Well, now, seems like this gent won't make the deal "right". The system does work a little slow in resolving matters like this but the process is in progress . . .CRIMINAL FRAUD will be answered to the POLICE . . . (warrant for his arrest is outstanding) CIVIL FRAUD will be answered in COURT and as my lawyer lets me, I'll be giving you up to date reports, naming dates, time and above all "the NAME" of this gentleman . . . A real jewel.

Smith acknowledged preparing and sending the newsletter to "friends, customers, dealers and those who have attended or who express an interest" in gun shows, and stated the mailing list for the publication contained approximately 1,500 persons, "less than 7% [of whom] reside in North Carolina."

**SAXON v. SMITH**

[125 N.C. App. 163 (1997)]

Plaintiff filed the instant action 7 March 1995, alleging claims of libel and slander, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Defendants' 28 April 1995 answer included a motion to dismiss under N.C.G.S. § 1A-1 Rule 12(b)(2) (1990) for lack of personal jurisdiction, as well as a motion to stay the proceedings under N.C.G.S. § 1-75.12(a) (1996) pending outcome of the Virginia litigation.

The trial court denied both motions in a 17 August 1995 order, which recited, *inter alia*, the following:

1. . . . In the case of the claims for malicious prosecution, abuse of process and intentional infliction of emotional distress, the Court finds that these are actions claiming injury to person within this state arising out of acts or omissions alleged to have occurred outside the state by the Defendants.

2. In the claim of slander and libel, the Court finds that such claim is for an action within this state arising out of an act or omission outside this state by Defendants and might also be construed to be an act or omission committed by Defendants within this state. (Plaintiff bases his claim for slander and libel in part upon a written communication alleged to have been authored by Defendants and sent to newsletter subscribers within the State of North Carolina communicating allegedly libelous material concerning Plaintiff. Plaintiff's claim for slander and libel also includes allegations of communications made in Virginia which lead to harm in North Carolina).

3. Defendants solicited or carried out service activities within North Carolina at or about the time of the injury claimed as follows:

   (a) Defendants solicited Plaintiff by telephone to request that he sell them the rifle at issue in this case; and

   (b) Defendants participated in a gun show in North Carolina, offering for sale firearms within this state.

4. Defendants communicated complaints and information regarding Plaintiff to law enforcement officials in Virginia which allegedly were intended to and did cause North Carolina criminal process to be issued against the Plaintiff and the Plaintiff to be arrested in North Carolina.

BASED ON THE FOREGOING FINDINGS OF FACT, the Court concludes as a matter of law that jurisdiction over Defendants and the claims alleged is conferred by North Carolina's Long Arm Statute, N.C.G.S. § 1-75.4, and the exercise of that statutorily conferred power will not violate the due process clause of the United States Constitution because Defendants have sufficient minimum contacts with North Carolina so that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

Defendants filed timely notice of appeal.

[1] Defendants raise two arguments on appeal. They first contend the trial court erred by denying the motion to dismiss "where defendants lack[ed] sufficient minimum contact" with North Carolina "to justify the State exercising personal jurisdiction over them." Second, defendants challenge the court's denial of their motion to stay. We discuss each question separately.

Initially, we observe that

[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant. . . .

N.C.G.S. § 1-277(b) (1996). Such appeal is limited to a determination of whether North Carolina statutes permit our courts "to entertain this action against defendant[s], and, if so, whether this exercise of jurisdiction violates due process." *Styleco, Inc. v. Stoutco, Inc.*, 62 N.C. App. 525, 526, 302 S.E.2d 888, 889, *disc. review denied*, 309 N.C. 825, 310 S.E.2d 358 (1983). Accordingly, we first examine the applicable statutory provisions.

[2] N.C.G.S. § 1-75.4 (1996), commonly referred to as the "long arm" statute, *Dillon v. Funding Corp.* 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977), provides in relevant part that:

A court of this State having jurisdiction over the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:

. . . .

(3) Local Act or Omission.—In any action claiming injury to person or property or for wrongful death within or without this

State arising out of an act or omission within this State by the defendant.

(4) Local Injury; Foreign Act.—In any action for wrongful death occurring within this state or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; or

b. Products, materials or things processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

Upon challenge to personal jurisdiction by a defendant, the plaintiff assumes "the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Godwin v. Walls,* 118 N.C. App. 341, 347, 455 S.E.2d 473, 481, *disc. review allowed,* 341 N.C. 419, 461 S.E.2d 757 (1995) (citation omitted). Defendants herein have set forth no assignments of error attacking the trial court's findings of fact supporting its determination of jurisdiction over each cause of action advanced by plaintiff. The court's findings are thus presumed to be correct. *See Concrete Service Corp. v. Investors Group, Inc.,* 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60, *cert. denied,* 317 N.C. 333, 346 S.E.2d 137 (1986) (failure of appellant "to except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence . . . will result in a waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact").

Notwithstanding their failure to challenge the court's findings, defendants argue generally that "there simply is no evidence that the Defendants committed one or more acts within North Carolina" so as to confer personal jurisdiction under G.S. § 1-75.4. In support of this assertion, defendants discuss at length cases holding that personal jurisdiction is not conferred by signing a contract with a North Carolina resident, *Robinson v. Hinkley,* 119 N.C. App. 434, 436, 458 S.E.2d 715, 716 (1995), nor by mere telephone contact with an individual located in North Carolina, *Curvcraft, Inc. v. J.C.F. and Assoc., Inc.,* 84 N.C. App. 450, 452, 352 S.E.2d 848, 849 (1987), nor by placing advertisements in a periodical. *Hankins v. Somers,* 39 N.C. App. 617, 620-21, 251 S.E.2d 640, 643 (1979). However, these cases speak to per-

sonal jurisdiction in the context of a contractual relationship and are inapposite.

As noted above, plaintiff has asserted claims of libel and slander, abuse of process, malicious prosecution and intentional infliction of emotional distress. G.S. § 1-75.4 is to be accorded a liberal construction, *Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982), and the term "injury to person or property" as used in the statute

> should be given a broad meaning consistent with the legislative intent to enlarge the concept of personal jurisdiction to the limits of fairness and due process, which negates the intent to limit the actions thereunder to traditional claims for bodily injury and property damages.

*Sherwood v. Sherwood,* 29 N.C. App. 112, 115, 223 S.E.2d 509, 512 (1976). While defendants do not raise the issue, we believe plaintiff's claims may properly be characterized as alleging "injur[ies] to person or property" within the purview of the statute. *See id.* at 116, 223 S.E.2d at 512 ("injury to person or property" includes claim based upon marital abandonment); *Golding v. Taylor,* 19 N.C. App. 245, 247, 198 S.E.2d 478, 479, *cert. denied,* 284 N.C. 121, 199 S.E.2d 659 (1973) (actions for alienation of affection and criminal conversation which involve wrongs willfully inflicted and the deprivation of marital companionship and cohabitation fall within statute); and *Godwin,* 118 N.C. App. at 350, 455 S.E.2d at 480 (claims of negligent infliction of emotional distress and loss of consortium properly classified as "injur[ies] to person or property" under statute).

Turning to plaintiff's libel and slander cause of action, the tort "is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 79 L. Ed. 2d 790, 799 (1984) (citing Restatement (Second) of Torts § 577A, Comment *a* (1977)). We note Smith admitted in his affidavit that defendants' newsletter, containing the allegedly defamatory material, was distributed to approximately 100 residents of North Carolina. Accordingly, defendants' alleged publication of defamatory material in North Carolina would constitute a "claim[] [for] injury to person . . . within this State arising out of an act . . . within this State by the defendant[s]," thus conferring personal jurisdiction over defendants under G.S. § 1-75.4(3).

The trial court also determined alternatively that personal jurisdiction regarding plaintiff's libel and slander claim was conferred

SAXON v. SMITH

[125 N.C. App. 163 (1997)]

pursuant to G.S. § 1-75.4(4). As we uphold the trial court ruling under G.S. § 1-75.4(3), the independent basis for the trial court's decision may be treated as surplusage and need not be discussed further.

Abuse of process is tortious conduct occurring in the jurisdiction within which the process is served, notwithstanding that it may have originated in another jurisdiction. *Vishay*, 696 F.2d at 1067-68. Defendants attempt to distinguish *Vishay* on grounds the California plaintiff therein brought a civil breach of contract action in that state and served process for that civil action in North Carolina. Defendants argue Smith simply alerted Virginia law enforcement officials regarding plaintiff's alleged actions, and insist that neither defendant

> personally initiated criminal actions against Plaintiff and there is no evidence that a request to extradite to North Carolina was ever asserted or that Defendants even demanded criminal action be taken.

Defendants' argument cannot be sustained.

We again observe that defendants failed to assign error to the trial court's findings and thus waived any argument directed at insufficiency of the evidence to support those findings. *See Concrete Service*, 79 N.C. App. at 684, 340 S.E.2d at 759-60. The court found as fact that

> defendants communicated complaints and information regarding Plaintiff to law enforcement officials in Virginia which . . . did cause North Carolina criminal process to be issued against the Plaintiff and Plaintiff to be arrested in North Carolina.

This uncontested finding, in addition to the court's unchallenged findings regarding defendants' contacts with this State, support imposition of personal jurisdiction over defendants pursuant to G.S. § 1-75.4(4) as to plaintiff's abuse of process claim, *i.e.*, as an out-of-state act alleged to have caused injury to plaintiff within North Carolina.

Moreover, this Court in *Moore v. City of Creedmoor*, 120 N.C. App. 27, 460 S.E.2d 899 (1995), *disc. review allowed*, 342 N.C. 658, 467 S.E.2d 718 (1996), recently rejected an argument similar to that of defendants. In *Moore*, we held that evidence tending to show defendant "initiated" or "instituted, procured or participated in," *id.* at 39, 460 S.E.2d at 906, as opposed to "actually filed," an earlier nuisance abatement action brought by the city would satisfy, for purposes of

SAXON v. SMITH

[125 N.C. App. 163 (1997)]

surviving summary judgment, the "initiated" element of a malicious prosecution claim based upon the prior civil nuisance suit. In similar vein, we believe plaintiff's detailed allegations of Smith's direct role in "initiating" the Virginia criminal proceedings were sufficient for purposes of overcoming defendants' N.C.R. Civ. P. 12(b)(2) to challenge to plaintiff's abuse of process claim.

Personal jurisdiction likewise was properly assumed over defendants under G.S. § 1-75.4(4) regarding plaintiff's intentional infliction of emotional distress and malicious prosecution claims in that North Carolina was the situs of the tortious injury alleged in each. Defendants' distribution of the newsletter in North Carolina and registering of a complaint with law enforcement authorities were actions directed at plaintiff within this state. The alleged resultant harm occurred in North Carolina, the residence of plaintiff, not Virginia, the location of defendants. As the United States Supreme Court stated in *Calder v. Jones*, 465 U.S. 783, 788-89, 79 L. Ed. 2d 804, 811-12 (1984):

> [h]ere, the plaintiff is the focus of the activities of the defendant out of which the suit arises . . . the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 541 (1985) (defendant given fair warning his conduct may subject him to jurisdiction of foreign state when "defendant has 'purposefully directed' his activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities"), and *Keeton*, 465 U.S. at 774, 79 L. Ed. 2d at 797 (publisher who distributes magazines in distant state accountable in that state for damages arising therein from allegedly defamatory story).

[3] Having concluded plaintiff met his initial burden of a *prima facie* showing that personal jurisdiction over defendants was conferred under G.S. § 1-75.4 as to each of plaintiff's claims, we turn to the second prong of the two-part analysis applicable to personal jurisdiction questions, i.e., whether the exercise of personal jurisdiction over

defendants pursuant to the statute is violative of due process. *Styleco*, 62 N.C. App. at 526, 302 S.E.2d at 889.

Under our "long arm" statute, North Carolina courts may obtain personal jurisdiction over a non-resident defendant to the full extent permitted by the Due Process Clause of the United States Constitution. *Trust Co. v. McDaniel*, 18 N.C. App. 644, 646, 197 S.E.2d 556, 558 (1973), *overruled on other grounds, Buying Group, Inc. v. Coleman*, 296 N.C. 510, 517-18, 251 S.E.2d 610, 615-16 (1979). Due process requires that the prospective defendant have "minimum contacts" with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (citations omitted). The existence of "minimum contacts" depends upon the particular facts of each individual case. *Coleman*, 296 N.C. at 517-18, 251 S.E.2d at 615-16. Among appropriate factors to be considered are the quantity and nature of the contact, the relationship between the contact and the cause of action, the interest of the forum state, the convenience of the parties, and the location of witnesses and material evidence. *Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 531, 265 S.E.2d 476, 479 (1980) (citations omitted).

We have determined above that, while the quantity of defendants' contacts with North Carolina may not have been extensive, they were sufficient for purposes of G.S. § 1-75.4, especially considering that the alleged injury under each claim was suffered by plaintiff within this State. *See Centura Bank*, 119 N.C. App. at 213-14, 458 S.E.2d at 18. This latter circumstance demonstrates a decided relationship between the contacts and plaintiff's claims and likewise favors plaintiff when weighing factors of the convenience of parties and location of witnesses and evidence. Moreover, North Carolina has a strong interest in protecting its citizens from local injury caused by the tortious conduct of foreign citizens:

In light of the powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors, the court has more readily found assertions of jurisdiction constitutional in tort cases.

*Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 609, 334 S.E.2d 91, 93 (1985) (state has strong interest in protecting persons doing business in North Carolina against employee fraud notwithstanding that contact limited to mailing fraudulent claims into this state). In sum, we do not believe maintenance of plaintiff's claims against defendants,

under the circumstances *sub judice*, in any way "offends traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 90 L. Ed. at 102.

**[4]** Finally, we address defendants' contention that the trial court erred by denying their motion to stay the instant action pending resolution of the Virginia complaint filed by Smith against plaintiff. The decision of whether to order such a stay under G.S. § 1-75.12(a) was committed to the court's sound discretion. *Management, Inc. v. Development Co.*, 46 N.C. App. 707, 711, 266 S.E.2d 368, 370, *disc. review denied and appeal dismissed*, 301 N.C. 93, 273 S.E.2d 299 (1980). Electing to treat defendants' assignment of error directed to this issue as a petition for writ of certiorari, *see* N.C.G.S. § 1-75.12(c) (review of denial of motion is "by means of a writ of certiorari"), we perceive no abuse of discretion in the denial of defendants' motion.

Affirmed.

Judges GREENE and MARTIN, Mark D., concur.