NO. COA13-251

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

KRISTIN BERRIER, individually and
in her capacity as Administrator
of the Estate of JACOB ALEXANDER
BERRIER, deceased, and JUSTIN
BERRIER, in his capacity as
Administrator of the Estate of
JACOB ALEXANDER BERRIER, deceased,
    Plaintiffs,

v.

CAREFUSION 203, INC., CAREFUSION
CORPORATION, LINCARE INC. d/b/a
PEDIATRIC SPECIALISTS, LINCARE
HOLDINGS, INC. d/b/a PEDIATRIC
SPECIALISTS, JONMARK MAYES,
SHELLEY R. BOYD, MASIMO
CORPORATION, MASIMO AMERICAS,
INC., and QUALITY MEDICAL RENTALS,
LLC,
    Defendants.

Guilford County
No. 11 CVS 10349

Appeal by defendant Quality Medical Rentals, LLC from order entered 14 November 2012 by Judge James C. Spencer in Guilford County Superior Court. Heard in the Court of Appeals 28 August 2013.

> *Van Laningham Duncan PLLC, by Alan W. Duncan, and Smith Moore Leatherwood LLP, by Richard A. Coughlin and Corinne B. Jones, for plaintiff-appellees.*

> *Carruthers & Roth, P.A., by Robert N. Young, Richard L. Vanore, and Michael J. Allen, for defendant-appellant.*

BRYANT, Judge.

Where Quality Medical does not challenge the applicability of our long-arm statute in the exercise of personal jurisdiction and competent evidence supports the trial court's findings of fact and conclusion of law that Quality Medical maintained minimum contacts with North Carolina such that the exercise of personal jurisdiction does not offend the notion of due process, we affirm the order of the trial court.

On 29 September 2011 and later on 3 April 2012, plaintiff Kristin Berrier, both individually and in her capacity as administrator of the Estate of Jacob Alexander Berrier, and Justin Berrier, in his capacity as administrator of the Estate of Jacob Alexander Berrier, filed and then amended a complaint against defendants CareFusion 203, Inc.; CareFusion Corporation; LinCare Inc. d/b/a Pediatric Specialists; LinCare Holdings, Inc. d/b/a Pediatric Specialists; Jonmark Mayes; Shelley R. Boyd; the Masimo Corporation; Masimo Americas, Inc.; and Quality Medical Rentals, LLC. In their amended complaint, plaintiffs sought relief on the basis of negligence from CareFusion, Pediatric Specialists, Mayes, Boyd, Masimo and Quality Medical. Plaintiffs claimed that CareFusion, Pediatric Specialists, Mayes, Boyd, and Masimo were liable for negligent infliction of emotional distress. Claiming

breach of an implied warranty of merchantability and unfair and deceptive trade practices, plaintiffs sought relief from CareFusion, Pediatric Specialists, and Masimo. Plaintiffs claimed that Pediatric Specialists, Mayes, and Boyd committed medical malpractice. Plaintiffs asked that punitive damages be assessed against CareFusion, Pediatric Specialists, Mayes, Boyd, and Masimo.

The allegations set forth in the complaint assert that in December 2007, Jacob Berrier, born 23 September 2007, was diagnosed with spinal muscular atrophy and placed on a ventilator. Other than for short periods of time, Jacob was unable to breathe on his own and was unable to move his head or extremities. On 5 November 2008, Pediatric Services became Jacob's supplier for medical equipment, products, respiratory supplies, and associated home ventilator program services. Pediatric Services provided Jacob with an LTV 950 ventilator and pulse oximeter. The LTV 950 ventilators were designed, manufactured, tested, inspected, marketed, and distributed by CareFusion. In June 2009, Pediatric Specialists entered into a service contract with Quality Medical Rentals, LLC, (Quality Medical) to service and repair LTV 950 ventilators. Quality Medical is a Florida corporation with its principal place of business in Largo, Florida.

Plaintiffs asserted that on 15 June 2009, Pediatric Specialists shipped an LTV 950 ventilator to Quality Medical from Winston-Salem, North Carolina. The LTV 950 ventilator was identified by its serial number – C15775 Ventilator. Quality Medical performed service and maintenance on the C15775 Ventilator on 22 June 2009 and then shipped the C15775 Ventilator back to Pediatric Specialists in Winston-Salem. On 18 July 2009, Pediatric Specialists employee and Center Manager Jonmark Mayes provided the C15775 Ventilator to Jacob. On 8 October 2009, the C15775 Ventilator malfunctioned – it stopped breathing for Jacob and failed to alarm. Jacob's mother was able to provide manual ventilation pending the arrival of EMS, and Jacob was then taken to a hospital where, for several days, he was treated for respiratory distress. The C15775 Ventilator was collected and returned to CareFusion which then returned the C15775 Ventilator to Pediatric Specialists reporting that it was in good mechanical and serviceable condition. Shelley Boyd, an employee of Pediatric Specialists, again delivered and set-up the C15775 Ventilator for Jacob at his home on 29 January 2010. That evening, the C15775 Ventilator once again malfunctioned; it stopped operating. The C15775 Ventilator alarm failed to sound, and the pulse oximeter failed to indicate by alarm that the C15775 Ventilator had stopped

operating. When found, Jacob was not breathing and was without a pulse. He was admitted to Moses Cone Hospital's pediatric critical care unit in Greensboro where he died four days later.

On 8 June 2012, Quality Medical filed a motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In an accompanying memorandum of law, Quality Medical argued that it did not have sufficient minimum contacts with North Carolina in order for the trial court to exercise personal jurisdiction over it in this matter. Following a 19 September 2012 hearing, the trial court entered an order denying Quality Medical's 12(b)(2) motion. In its 14 November 2012 order, the trial court concluded that North Carolina's long arm statute authorized the exercise of personal jurisdiction and that plaintiffs' assertions established the minimum contacts necessary to satisfy the standards of specific jurisdiction. As such, the trial court's exercise of personal jurisdiction over Quality Medical comported with constitutional standards of due process. Quality Medical appeals.

_____

On appeal, Quality Medical raises the following issues: whether the trial court erred by (I) including specific findings of fact in its order denying Quality Medical's motion to dismiss;

and (II) concluding that the exercise of personal jurisdiction comports with due process.

*Right to appeal*

Pursuant to North Carolina General Statutes, section 1-277, "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant or such party may preserve his exception for determination upon any subsequent appeal in the cause." N.C. Gen. Stat. § 1-277(b) (2011); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614, 532 S.E.2d 215, 217 (2000) ("The denial of a motion to dismiss for lack of jurisdiction is immediately appealable." (citation omitted)).

*I*

Quality Medical argues that in the order denying Quality Medical's motion to dismiss for lack of personal jurisdiction, the trial court erred in making certain findings of fact. More specifically, Quality Medical contends that the trial court erred in making findings of fact based upon (1) unverified allegations in the amended complaint, (2) incompetent deposition testimony, and (3) service and maintenance records not relevant to the ventilator central to this case. We disagree.

*Standard of review*

The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court. Typically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).

Quality Medical submitted a motion to dismiss plaintiffs' amended complaint for lack of personal jurisdiction. The motion was supported by an affidavit from Quality Medical manager Donald Perfetto and a memorandum of law contending that Quality Medical lacked sufficient minimum contacts with North Carolina for the trial court to exercise personal jurisdiction.

[I]f the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations in the complaint can no longer be taken as true or controlling and plaintiff cannot rest on the allegations of the complaint. In order to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence).

*Id.* at 693-94, 611 S.E.2d at 182-83 (citations and quotations omitted).

Where, as here, the trial court holds an evidentiary hearing including depositions and arguments of counsel, "the trial court [is] required to act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence." *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006) (citation omitted).

> When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; . . . [w]e are not free to revisit questions of credibility or weight that have already been decided by the trial court.

*Id.* at 321, 629 S.E.2d at 165 (citation and quotations omitted).

*(1)   Unverified allegations*

Quality Medical first argues that the unverified allegations in plaintiffs' amended complaint are not competent evidence and should not have been considered by the trial court.

"Where unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction ... and defendant[s] ... d[o] not contradict plaintiff's allegations in their sworn affidavit, such allegations are accepted as true and deemed controlling." *Inspirational*

*Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998) (citation and quotations omitted).

Quality Medical specifically notes the trial court's finding of fact number 10, which states "the allegations of the Plaintiffs in the Amended Complaint, if proven, would constitute a clear source and connection of the cause of action to the contacts of Quality Medical."[1]  Quality Medical argues that the trial court impermissibly relied upon the allegations of the amended complaint as the key factor in deciding the "source and connection of the cause of action to the contacts."

In the amended complaint, plaintiffs assert that "[u]pon information and belief, at all times relevant herein, Quality Medical serviced products, materials, and things, including but not limited to the C15775 Ventilator that is the subject of this action, that were used within North Carolina in the ordinary course of business."  In its motion to dismiss the amended complaint and the accompanying documents, Quality Medical acknowledges that it

---

[1] The trial court gave careful consideration to the existence of minimum contacts with the forum state in determining specific jurisdiction based on the following factors:
(1)  quantity of the contacts;
(2)  the nature and quality of the contacts;
(3)  the source and connection of the cause of action to the contacts;
(4)  the interest in the forum state; and
(5)  convenience of the parties.

is a limited liability company located in Florida, that "the vast majority of [its] business is servicing medical equipment," and that it receives medical equipment and service requests from Pediatric Specialists. It also states that "[i]n July 2009 Pediatric Specialists provided Plaintiffs ventilator # C15775 . . . [and that] Quality Medical serviced ventilator C15775 in Florida in June 2009." The amended complaint alleges that "[a]s a result of the C15775 Ventilator failure, Jacob [Berrier] suffered severe hypoxic injury and brain damage, including hypoxic-ischemic encephalopathy and diffuse cerebral edema, and remained in the Pediatric Critical Care Unit at the Hospital for four days, and then died." On this record, it is clear that the uncontroverted allegations of the amended complaint along with certain acknowledgments in Quality Medical's motion to dismiss and documentation in support thereof provide competent evidence to support the trial court's finding of fact number 10: "[I]f proven, [the allegations] would constitute a clear source and connection of the cause of action to the contacts of Quality Medical." *See Banc of Am. Sec.*, 169 N.C. App. at 693-94, 611 S.E.2d at 182-83; *Inspirational Network*, 131 N.C. App. at 235, 506 S.E.2d at 758.

Quality Medical also challenges other findings of fact on the basis that the trial court relied heavily on unverified allegations

in the amended complaint. In challenging these findings of fact, Quality Medical argues that "there is no evidence in the record that [it] had any knowledge of who the final user of any medical equipment would be or where the equipment would be used."

The trial court made pertinent findings of fact that Quality Medical performed service and repairs to medical equipment designed for home oxygen care and respiratory therapy; that some requests for Quality Medical's services came from Pediatric Specialists, which sent equipment from North Carolina to Quality Medical in Florida; and that Quality Medical returned the medical equipment from Florida to Pediatric Specialists in North Carolina. Though the trial court acknowledged Quality Medical's contention that when returning repaired medical equipment Quality Medical had no knowledge of the end user's identity, the trial court found unreasonable if not incredible the proposition that Quality Medical did not know the identity of the end user or that there would be an end user in North Carolina.

> 9. The [Trial] Court does find that the nature and quality of the contacts . . . establish a reasonable expectation on the part of Quality Medical that the serviced and repaired medical equipment received from and returned to North Carolina would be used by medically dependent consumers within the State.

Therefore, the uncontested allegations of the amended complaint in conjunction with the averments of the affidavit provide a sufficient basis to uphold the challenged findings of fact. *See Banc of Am. Sec.*, 169 N.C. App. at 693-94, 611 S.E.2d at 182-83; *Inspirational Network*, 131 N.C. App. at 235, 506 S.E.2d at 758.

*(2) Deposition testimony of Shelley Boyd and Jonmark Mayes*

Next, Quality Medical argues that the deposition testimony of Pediatric Specialists employee Shelley Boyd and former employee Jonmark Mayes was not competent to establish personal jurisdiction over Quality Medical.

In her deposition testimony, Shelley Boyd, an employee of Pediatric Specialists at the time of her deposition on 29 August 2012, testified that while the center for which she worked sent broken or malfunctioning equipment for repair to Quality Medical, she was unaware if Pediatric Specialists used Quality Medical for repair and maintenance services in 2009 and the beginning of 2010.

Jonmark Mayes, a former employee and center manager of Pediatric Specialists, stated in his deposition testimony that Pediatric Specialists used Quality Medical "the majority of the time" for periodic maintenance of ventilators but failed to be specific as to what period he was referring.

We agree with Quality Medical that the deposition testimony of Boyd and Mayes is not competent standing alone to support the trial court's findings of fact as to personal jurisdiction. However, Quality Medical does not allege and we do not find that the trial court made any finding of fact solely predicated upon the deposition testimony of Boyd or Mayes. Therefore, we review additional evidence that might be deemed competent to support the trial court's findings of fact as to personal jurisdiction.

*(3) Service records of ventilators*

Quality Medical next argues that the trial court erred in making findings of fact based upon evidence retrieved from the maintenance records of ventilators serviced by Quality Medical that were not related to the cause of action.

The record reflects four maintenance or repair records from Pediatric Specialists of ventilators serviced by Quality Medical between 2008 and 2010. Of the four records, Quality Medical acknowledges and does not otherwise contest the record relating to its service of Ventilator C15775 in June 2009 but contends that the remaining three service reports, which relate to Ventilator C02515, are not relevant to the cause of action against Quality Medical. Quality Medical bases this contention on plaintiffs'

failure to claim negligence in the maintenance of Ventilator C02515.

We point out that the question presented is whether competent evidence exists to support the challenged findings of fact. While the maintenance records do not support one finding, exclusively, the maintenance records do support the trial court's finding of fact number 1:

> 1. . . . [O]n at least four separate occasions between September of 2008 and May [2010], [Quality Medical did] receive LTV950 ventilator medical devices from co-defendant Lincare [(Pediatric Specialists)] sent from North Carolina, on which Quality Medical performed service, maintenance and/or repair in Florida and then returned to Lincare [(Pediatric Specialists)] in North Carolina.

Quality Medical further contends that the service records for LTV950 ventilator serial number Ventilator C02515 are not competent evidence to support findings that in turn support the trial court's conclusion that the exercise of personal jurisdiction over Quality Medical based on specific jurisdiction does not violate due process. We consider this argument more fully in our discussion of issue II.

We note that on appeal, Quality Medical listed findings of fact 1, 2, 5, 6, 7, 8, 9, 10, and 14 as findings it intended to challenge as made in error. In its argument to this Court, Quality

Medical directly challenged findings of fact 6, 7, 8, 9, and 10 for the following reasons: lacking sufficient basis; incompetent deposition testimony (though it failed to direct our attention to any finding of fact predicated on the testimony); and relevancy (but, again, failed to direct the attention of this Court to any finding of fact made in error as a result). To the extent that findings of fact 1, 2, and 5 are unchallenged by Quality Medical, those findings are binding on appeal.[2] *See In re Schiphof*, 192

---

[2] In its 14 November 2012 order, the trial court made the following findings of fact:

1. [(A)] The Court does find from the evidence presented that at least two Lincare personnel in North Carolina were of the opinion that Quality Medical provided maintenance services for Lincare's ventilator medical devices and that Quality Medical did, on at least four occasions between September of 2008 and May of [2010], receive LTV950 ventilator medical devices from co-defendant Lincare sent from North Carolina, on which Quality Medical performed service, maintenance and/or repair in Florida and then returned to Lincare in North Carolina.

   (B) The nature and quality of the contacts – Plaintiffs do not suggest that Quality Medical had direct contact with, or even knew the identity of, the ultimate users of the medical equipment which it serviced for its co-defendants Lincare, Inc. and Lincare Holdings, Inc., both d/b/a Pediatric Specialists, providers of home oxygen care and other respiratory therapy services. . . . There is no evidence of Quality Medical having any offices, employees, sales representatives or other agents in North Carolina (its only office is in Florida); it has no property (real or personal) in North Carolina; it has not actively or specifically solicited business or advertised in North Carolina, although it has a website which describes the services it performs at

N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008) ("Unchallenged findings of fact are presumed correct and are binding on appeal." (citation omitted)). Finding of fact 14 states in pertinent part that "specific jurisdiction exists, the cause of action having arisen from or being related to Defendant Quality Medical's contacts with the forum." We will consider this finding as it relates to Quality Medical's arguments presented in issue II.

*II*

Quality Medical argues that the trial court erred in concluding the exercise of personal jurisdiction comports with constitutional standards of due process. Specifically, Quality Medical contends that it did not purposefully avail itself of the opportunity to do business in North Carolina and that it lacked

---

its Florida location; it is not licensed or registered to do business in North Carolina; and it has never previously been involved in litigation in North Carolina; and

2. The Court does find the above-referenced facts to be established by a preponderance of the evidence.
       However, there likewise appears to be no serious dispute as to the following additional facts, which the Court also finds to be established by a preponderance of the evidence:

. . .

5. Some of the service requests came from Lincare locations in North Carolina[.]

sufficient contacts with the state to satisfy the standard of specific jurisdiction.  We disagree.

In its 14 November 2012 order denying Quality Medical's motion to dismiss, the trial court drew the following conclusion:

> Having considered the five factors used in determining the existence of the minimum contacts necessary to properly allow the exercise of that statutory jurisdiction, the Court finds that Quality Medical, having delivered the repaired and serviced medical equipment into the stream of commerce in North Carolina with the reasonable expectation that the equipment would be used by medically dependent consumers within the State, was "fairly warned" that litigation might result from injuries that were alleged to have arisen out of or were related to its activities in servicing or repairing the equipment and the Court further finds that *specific jurisdiction* exists, the cause of action having arisen from or being related to Defendant Quality Medical's contacts with the State.

(emphasis added).  "When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court."  *Banc of Am. Secs.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citation and quotations omitted).

In addressing a challenge to personal jurisdiction over a non-resident defendant, a trial court must employ a two-step analysis.  "First, the transaction must fall within the language

of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986) (citation omitted). Quality Medical does not contest whether a basis for jurisdiction exists under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4 (2011), instead contending only that the exercise of personal jurisdiction over it offends constitutional standards of due process.

*Long-Arm Statute*

The exercise of personal jurisdiction is authorized pursuant to our long-arm statute, General Statutes, section 1-75.4,

> in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
>
> . . .
>
> b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade[.]

N.C. Gen. Stat. § 1-75.4(4)(b.) (2011). "Under our 'long arm' statute, North Carolina courts may obtain personal jurisdiction over a non-resident defendant to the full extent permitted by the Due Process Clause of the United States Constitution." *Saxon v.*

*Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) (citation omitted).

*Due Process*

"To satisfy the requirements of the due process clause, there must exist 'certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The concept of 'minimum contacts' furthers two goals. First, it safeguards the defendant from being required to defend an action in a distant or inconvenient forum. Second, it prevents a state from escaping the restraints imposed upon it by its status as a coequal sovereign in a federal system." *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006) (citation omitted). When evaluating whether minimum contacts with the forum exists, a court typically evaluates "the quantity and nature of the contact, the relationship between the contact and the cause of action, the interest of the forum state, the convenience of the parties, and the location of witnesses and material evidence." *Saxon*, 125 N.C. App. at 173, 479 S.E.2d at 794 (citation omitted).[3]

---

[3] While we acknowledge Quality Medical's cited authority supporting

The trial court found that Quality Medical received repair requests for two of the ventilators referred to in the amended complaint, serviced those devices in Florida, and returned the devices to Pediatric Specialists in North Carolina. The trial court found implausible the proposition that Quality Medical did not know what the end use of the ventilators would be or that the end user – a medically dependent consumer – would be located in North Carolina. Based on the record before us, we uphold this finding. The trial court further found that, if proven true, the allegations of the complaint – namely that Quality Medical's negligence in servicing ventilator model LTV950, serial number C15775, resulted in injury, damage, and death – form the basis of the action. This Court has previously acknowledged that our State has a powerful public interest in protecting its citizens against out-of-state tortfeasors. *See id.* at 173, 479 S.E.2d at 794 ("In light of the powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors, the court has more readily found assertions of jurisdiction constitutional in tort cases."); *see also Cooper v. Shealy*, 140

---

its position that it did not purposefully avail itself of the privilege of conducting business in North Carolina, we recognize that the cases cited regard contractual relations, not tortious conduct.

N.C. App. 729, 537 S.E.2d 854 (2000) (holding the exercise of jurisdiction did not offend due process where the defendant engaged in tortious conduct: alienation of affection and criminal conversation). Though on appeal Quality Medical asserts that North Carolina would be an inconvenient forum in which to litigate this action, it provides no support for this assertion.

Specifically, given the quality and nature of the contacts between Quality Medical and North Carolina, the connection between Quality Medical's contacts with the State and the cause of action, and the interest of North Carolina in protecting its citizens from tortfeasors, the maintenance of the suit in North Carolina does not offend traditional notions of fair play and substantial justice. *See Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786; *see also Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 609, 334 S.E.2d 91, 94 (1985) ("It was clear that the alleged tort would have its damaging effect in North Carolina. Simply because defendant was able to cause the injury without physically coming to this state does not defeat jurisdiction." (citation omitted)). Accordingly, we overrule Quality Medical's challenge to the trial court's exercise of personal jurisdiction.

Affirmed.

Judges STEPHENS and DILLON concur.