An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1376

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

K$^2$ ASIA VENTURES, BEN C. BROOCKS,
AND JAMES G. J. CROW,
    Plaintiffs,

    v.                                 Forsyth County
                                       No. 09 CVS 2766

ROBERT TROTA, VERONICA TROTA,
JOSELITO SALUDO, CAROLYN T. SALUD,
ROLAND V. GARCIA, CRISTINA T.
GARCIA, JIM FUENTEBELLA, MAVIS
FUENTEBELLA, SHARON FUENTEBELLA,
MAX'S BACLARAN INC., CHICKENS R
US, INC., MAX'S MAKATI INC., MAX'S
ERMITA, INC., MAX'S OF MANILA,
INC., THE REAL AMERICAN DOUGHNUT
COMPANY INC., TROFI VENTURES,
INC., AND RUBY INVESTMENT COMPANY
HOLDINGS, INC., KRISPY KREME
DOUGHNUT CORPORATION, AND KRISPY
KREME DOUGHNUTS, INC.,
    Defendants.


    Appeal by plaintiffs from order entered 26 July 2013 by Judge Anderson D. Cromer in Forsyth County Superior Court. Heard in the Court of Appeals 4 June 2014.


    *Watts Guerra LLP, by Christopher V. Goodpastor, pro hac vice, and Blanco Tackabery, by Peter J. Juran, for plaintiff-appellants.*

*Bell, Davis & Pitt, P.A., by William K. Davis, Alan M. Ruley, and Bradley C. Friesen, for defendant-appellees.*

BRYANT, Judge.

Where the trial court's order granting a motion to dismiss for lack of personal jurisdiction is supported by competent evidence, we affirm.

$K^2$ Asia Ventures is a Cayman Island company with its principal place of business in Austin, Texas. $K^2$ Asia Ventures was formed by Ben C. Broocks, a resident of Texas, and James G. J. Crow, a resident of Wyoming, for the purpose of creating Krispy Kreme franchises in Asia — specifically, the Philippines, Hong Kong, and Thailand.

After meeting with Krispy Kreme to discuss franchising requirements, Broocks approached Carolyn T. Salud about establishing Krispy Kreme stores in the Philippines. Broocks chose Salud because she and her extended family operate a large chain of fried chicken restaurants, known as "Max's," in the Philippines, Canada, and the United States. Salud and her extended family, including Robert Trota, Veronica Trota, Joselito Saludo, Roland V. Garcia, Cristina T. Garcia, Jim Fuentebella, Mavis Fuentebella, and Sharon Fuentebella, also operate several food service businesses, including Max's

Baclaran, Inc., Chickens R Us, Inc., Max's Makati, Inc., Max's Ermita, Inc., and Max's of Manila, Inc., as well as two investment and corporate management firms, Trofi Ventures, Inc., and Ruby Investment Company Holdings, Inc. With the exception of Max's of Manila, a California-based corporation, all of the Salud family's businesses are based in the Philippines, and all members of the Salud family are Philippine citizens.

Carolyn Salud and her family agreed to enter into negotiations with Broocks to establish Krispy Kreme franchises in the Philippines. In 2004, Broocks executed a memorandum of understanding ("MOU") between $K^2$ Asia Ventures, Max's Ermita, Inc., and a group of three individual investors. The MOU required Broocks, as a member and manager of $K^2$ Asia Ventures, to work for the creation of a Krispy Kreme franchise agreement for Max's Ermita, Inc. Once a franchise was awarded, the MOU directed the creation of a new Philippine corporation with all MOU parties recognized as shareholders. The MOU also required that any disputes arising under its terms would be subject to the laws of the Philippines.

In 2005, Carolyn Salud signed a confidentiality agreement with Krispy Kreme on behalf of herself and her family members. During this same time period, on 26 October 2005, Krispy Kreme

and $K^2$ Asia Ventures entered into a letter of intent that contained provisions concerning the confidentiality agreement. In her deposition, Carolyn Salud stated that although the confidentiality agreement referred to the Krispy Kreme / $K^2$ Asia Ventures letter of intent which was supposedly attached to the agreement, the letter was never attached nor provided.

In January 2006, a meeting was held in South Korea between Broocks, Carolyn Salud, Robert Trota, Cristina Garcia, Jim Fuentebella, Sharon Fuentebella, and several Krispy Kreme representatives. After the meeting, Krispy Kreme agreed to award the Salud family a franchise; the Salud family agreed to retain Broock's law firm, Jackson Walker, to negotiate the franchise agreement. The Salud family then created a new business, The Real American Doughnut Company, to develop and operate the Krispy Kreme franchise.

Business relations between the Salud family and Broocks soured after a "heated conference call" in March 2006 between Carolyn Salud, Jeff Welch of Krispy Kreme, and Patrick Tobin and Broocks of the Jackson Walker law firm. On 26 April 2006, Krispy Kreme and The Real American Doughnut Company agreed to a development agreement for a Krispy Kreme franchise based in the Philippines. Under the terms of this development agreement,

disputes would be first subject to non-binding mediation in Winston-Salem, North Carolina; binding arbitration would be conducted in New York City, New York under New York law.

On 7 April 2009, K$^2$ Asia Ventures, Ben C. Broocks, and James G. J. Crow ("plaintiffs") filed a complaint against Robert Trota, Veronica Trota, Joselito Saludo, Carolyn T. Salud, Roland V. Garcia, Cristina T. Garcia, Jim Fuentebella, Mavis Fuentebella, Sharon Fuentebella, Max's Baclaran, Inc., Chickens R Us, Inc., Max's Makati, Inc., Max's Ermita, Inc., Max's of Manila, Inc., The Real American Donut Company Inc., Trofi Ventures, Inc., Ruby Investment Company Holdings, Inc., Krispy Kreme Doughnut Corporation, and Krispy Kreme Doughnuts, Inc. ("defendants"), alleging various causes of action arising from an alleged breach of a business agreement between plaintiffs and defendants. On 19 June and 18 August 2009, defendants Robert Trota, Veronica Trota, Joselito Saludo, Carolyn T. Salud, Roland V. Garcia, Cristina T. Garcia, Jim Fuentebella, Mavis Fuentebella, Sharon Fuentebella, Max's Baclaran, Inc., Chickens R Us, Inc., Max's Makati, Inc., Max's Ermita, Inc., Max's of Manila, Inc., The Real American Donut Company Inc., Trofi Ventures, Inc., and Ruby Investment Company Holdings, Inc. (the

"non-resident defendants") filed motions to dismiss for lack of personal jurisdiction.

On 11 August 2009, plaintiffs served their first set of interrogatories, requests for production of documents, and requests for admissions on all defendants; plaintiffs then filed a 10 March 2010 motion to compel depositions. On 19 April 2010, the trial court granted plaintiffs' motion to compel depositions. Defendants appealed to this Court, and on 1 March 2011, this Court dismissed defendants' appeal as interlocutory. *See K2 Asia Ventures v. Trota*, 209 N.C. App. 716, 708 S.E.2d 106 (2010).

While defendants' appeal to this Court was pending, on 30 April 2010, plaintiffs filed new motions to compel production of documents from defendants. On 15 June 2010, the trial court granted plaintiffs' motions for production of specific documents. Defendants appealed to this Court, arguing that the trial court erred in granting plaintiffs' motions because defendants' documents were privileged. This Court affirmed the trial court's order, holding that defendants failed to demonstrate that the requested documents were protected under either the attorney-client or work product privileges. *See K2*

*Asia Ventures v. Trota*, 215 N.C. App. 443, 717 S.E.2d 1, *review denied*, 365 N.C. 369, 719 S.E.2d 37 (2011).

On 4 February 2011, plaintiffs filed an amended complaint against defendants alleging that plaintiff Broocks had expended time and money for travel and communications between and with defendants Krispy Kreme Doughnut Corporation and Krispy Kreme Doughnuts, Inc. ("Krispy Kreme defendants") "for the purpose of procuring franchise rights" for plaintiffs and defendants. Plaintiffs' amended complaint further asserted claims against defendants for breach of contract, intentional interference with contractual relationship and prospective economic advantage, promissory estoppel, breach of fiduciary duties, unfair and deceptive trade practices, *quantum meruit*, and unjust enrichment.

On 8 April 2011, the non-resident defendants filed a Rule 12(b)(2) motion to dismiss plaintiffs' amended complaint for lack of personal jurisdiction. On 16 September, plaintiffs and the Krispy Kreme defendants filed a joint motion for designation of case as exceptional; the motion was granted on 23 September.

On 12 September 2012, a hearing was conducted on the non-resident defendants' motion to dismiss plaintiffs' amended complaint, the Honorable Anderson D. Cromer, Judge presiding.

On 26 July 2013, the trial court granted the non-resident defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Plaintiffs appeal.

_____

At the outset we note that although plaintiffs' appeal is interlocutory, it is immediately appealable and properly before this Court. Pursuant to North Carolina General Statutes, section 1-277, "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant or such party may preserve his exception for determination upon any subsequent appeal in the cause." N.C. Gen. Stat. § 1-277(b) (2013); *see also A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257—58, 625 S.E.2d 894, 898 (2006) ("[M]otions to dismiss for lack of personal jurisdiction affect a substantial right and are immediately appealable[.]" (citation omitted)).

_____

On appeal, plaintiffs contend the trial court erred in granting the non-resident defendants' motion to dismiss for lack of personal jurisdiction. We disagree.

> The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court. Typically,

the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).

The non-resident defendants filed a Rule 12(b)(2) motion to dismiss plaintiffs' amended complaint for lack of personal jurisdiction. This motion was supported by first and second affidavits made by each of the non-resident defendants asserting a lack of personal jurisdiction. Plaintiffs did not file any affidavits in response to rebut the non-resident defendants' motion to dismiss.

[I]f the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations [in the complaint] can no longer be taken as true or controlling and plaintiff[] cannot rest on the allegations of the complaint. In order to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence).

*Id.* at 693—94, 611 S.E.2d at 182—83 (citations and quotations omitted). "Where, as here, the trial court holds an evidentiary hearing including depositions and arguments of counsel, the trial court [is] required to act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence." *Berrier v. Carefusion 203, Inc.*, ___ N.C. App. ___, ___, 753 S.E.2d 157, 161 (citing *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006)), *cert. denied*, 366 N.C. 597, 740 S.E.2d 477 (2014).

> When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; . . . [w]e are not free to revisit questions of credibility or weight that have already been decided by the trial court.

*Id*. at ___, 753 S.E.2d at 161—62 (citation omitted).

Plaintiffs argue that the trial court erred in granting the non-resident defendants' motion to dismiss for lack of personal jurisdiction. In its order granting the non-resident defendants' motion to dismiss, the trial court made seventy-nine findings of fact and seventy-six conclusions of law. Plaintiffs, in their reply brief, challenge findings of fact 6, 11, 15, 18, 22—24, 28, 36—37, 41—53, 63—64, 66, 71, 72, 73, 75—

79, and conclusions of law 36—44, 49, and 50—54. However, in their initial brief plaintiffs do not specifically challenge any of the trial court's findings of fact or conclusions of law. Rather, in both briefs plaintiffs present broad arguments contending the non-resident defendants "failed to controvert a plethora of [plaintiffs'] evidence regarding [the non-resident defendants'] contacts with North Carolina" and, thus, the exercise of personal jurisdiction over the non-resident defendants would be fair and reasonable, and comport with due process.

In conducting its hearing, the trial court heard the arguments of counsel, reviewed numerous pages of documentary evidence, and saw recordings of depositions. As such, the trial court served as the fact-finder and made its decision as to personal jurisdiction accordingly. *See id.* at ___, 753 S.E.2d at 161—64. Although plaintiffs now challenge the trial court's order on grounds that the trial court's order was not supported by competent evidence, we reiterate that

> [w]hen this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; . . . [w]e are not free to revisit questions of credibility or weight that have already been decided by the trial court.

*Id*. at ___, 753 S.E.2d at 161—62 (citation omitted).

In its order, the trial court made extensive findings of fact as to the level of activity, or lack thereof, of the non-resident defendants in the state of North Carolina. The trial court concluded that plaintiffs had not met their burden of showing that the non-resident defendants were engaged in substantial activity within North Carolina such that the non-resident defendants would be subject to personal jurisdiction. Further, the trial court concluded, after numerous and relevant findings of fact, that the non-resident defendants had not consented to jurisdiction in North Carolina. Our review of the record confirms the trial court's findings of fact were supported by competent evidence in the record. The record indicates that both plaintiffs and the non-resident defendants presented the trial court with an array of evidence regarding the extent of the agreements, communications, and other forms of contact between the plaintiffs, the non-resident defendants, and the Krispy Kreme defendants. Although certain pieces of evidence were disputed by the parties, the trial court was the appropriate entity to consider the weight and credibility of such evidence. Notwithstanding that contrary findings could have been made, as we have noted previously, the findings made

by the trial court to support its ultimate conclusion are supported by competent evidence in the record. Accordingly, plaintiffs' general contention that the trial court erred in not finding personal jurisdiction as to the non-resident defendants because both parties presented disputed evidence is without merit. Therefore, we affirm the trial court's order granting the non-resident defendants' motion to dismiss for lack of personal jurisdiction.

Affirmed.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).